**Donna TURNBO, by Judy CAPRA, her guardian, Appellant,**

v.

**CITY OF ST. CHARLES, Respondent.**

No. 68852.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 22, 1996.

David M. Duree, St. Louis, for appellant.

John A. Michener, St. Louis, for respondent.

RHODES RUSSELL, Presiding Judge.

Donna Turnbo appeals the judgment entered on a jury verdict in a personal injury suit she brought against the City of St. Charles ("City") for negligence. Turnbo claims that the trial court improperly allowed the reading of the deposition of her treating psychiatrist to impeach her credibility. Turnbo argues the expert opinion was irrelevant and prejudicial because it was not expressed 1) within a reasonable medical certainty; 2) about her particular condition; and 3) in regards to her ability to perceive or recollect the events at any relevant time. We find no abuse of discretion by the trial court in admitting the deposition testimony, and affirm.[1]

On November 12, 1990, Turnbo was walking in Blanchette Park in St. Charles when she stepped in a hole. Her foot struck a partially removed tree stump, breaking her foot and ankle in three places. Turnbo filed suit against the City contending that the City negligently failed 1) to warn of the dangerous

condition or barricade the area; 2) to fill the hole after removal of the stump; and 3) to remove leaves from the area, thereby camouflaging the condition.

In Turnbo's behalf, the deposition of her treating psychiatrist, Dr. John B. Crane, was taken. Turnbo had intended to offer the testimony to show that her injuries from the fall aggravated her schizophrenic condition. The trial court ruled prior to trial that this testimony could not be admitted because it did not establish within reasonable medical certainty that the fracture aggravated Turnbo's schizophrenia.

Also, prior to trial, the court conducted a hearing to determine if Turnbo was competent to stand trial as she had been adjudicated to be incapacitated on April 27, 1994, as a result of her paranoid schizophrenia. The court found her competent to stand trial.

Turnbo did not offer any portion of Dr. Crane's deposition at trial. As part of its case, however, the City offered excerpts from the deposition over Turnbo's objection. The jury returned a verdict in favor of the City, assessing zero percent fault to both Turnbo and the City. Turnbo filed a motion for a new trial and the trial court denied it. Judgment was entered on the verdict. This appeal follows.

Turnbo's first point on appeal is that the trial court erred in allowing the psychiatrist's deposition to be read to the jury because it was prejudicial, irrelevant and invaded the province of the jury. More specifically, she argues that the trial court erred by admitting the psychiatrist's deposition because it did not establish that her mental condition affected her powers of observation and recollection at the time of the incident or while she testified.

The admission or exclusion of expert testimony is left to the sound discretion of the trial court. *Boyer v. Eljer Mfg., Inc.,* 830 S.W.2d 535, 539 (Mo.App.1992). We presume discretionary rulings of a trial court are correct. *Strycharz v. Barlow,* 904

1. Turnbo has also filed a Motion to Supplement the Record with the deposition transcript of Dr. John McAllister, the medical doctor who treated her foot injuries. Since the deposition transcript is merely a written form of Dr. McAllister's testimony which was introduced to the jury via videotape, we grant the Motion to Supplement.

S.W.2d 419, 423 (Mo.App.1995). A trial court abuses its discretion when a ruling shocks one's sense of justice, indicates a lack of consideration, and is clearly against the logic of the circumstances. *Id.*

■ Turnbo first argues that Dr. Crane's opinions regarding her ability to perceive and recollect events were irrelevant because they were not related to her in particular, but merely expressed opinions about patients in general who suffer from schizophrenia. Turnbo cites no authority to support her proposition that an expert witness must directly associate each opinion with the witness to be impeached by his or her testimony. Assuming, *arguendo,* that an expert opinion must be expressed about a party in particular, the record shows that Dr. Crane's testimony not only related to schizophrenics in general, but also to Turnbo in particular.

Dr. Crane first examined Turnbo on January 4, 1994, over three years after the accident. Turnbo's sister, Judy Capra, concerned about Turnbo's mental behavior, was seeking to have Turnbo declared incompetent. Capra was also concerned about Turnbo's refusal to regularly take her medication, without which she was prone to having psychotic episodes.

During the initial examination of Turnbo, Dr. Crane found Turnbo to be confusing and psychotic. She was unable to provide Dr. Crane with an accurate medical history. Dr. Crane testified that Capra told him of Turnbo's psychiatric history and previous hospitalizations for mental problems. He came to the conclusion that she showed symptoms and had a history consistent with a diagnosis of residual schizophrenia. Dr. Crane found that Turnbo had demonstrated over the years an inability to care for herself and that when she failed to take her medication she became psychotic. Dr. Crane stated that Turnbo, prior to her treatment by him, had consistently refused psychiatric follow-up and refused to take her medication.

Finding Turnbo to be psychotic and unable to care for herself, Dr. Crane consulted with Capra about admitting Turnbo into the hospital. Turnbo was admitted into involuntary hospitalization on January 21, 1994. Having found that Turnbo was incompetent in handling her own affairs, Turnbo was placed in a residential care facility. In early 1994, the Franklin County Probate Court appointed Capra as Turnbo's guardian.

Dr. Crane next saw Turnbo on September 8, 1994, for a followup examination. According to Dr. Crane, Turnbo appeared to be "doing pretty good," since her placement in the residential care facility and regular administration of medication. Dr. Crane visited Turnbo on November 29, 1994, and found her to be doing well. Dr. Crane continued treating Turnbo up until the date of the trial. Although Dr. Crane found some improvement in Turnbo's mental status, he stated that Turnbo was still unable to care for herself.

In his deposition testimony, Dr. Crane testified Turnbo had symptoms consistent with persons suffering from schizophrenia. Dr. Crane specifically stated that he had observed symptoms of schizophrenia in Turnbo including "loose associations, flat affect, marked ambivalence, psychotic and conclusional thinking." Dr. Crane explained that "loose association" was the inability of a schizophrenic patient to associate one idea with the next one. He said that patients with schizophrenia tend to have difficulty concentrating, difficulty making decisions, and tend to have hallucinations and delusional thinking. Dr. Crane then explained that "by definition, psychotic folks are not able to distinguish reality from unreality," and testified that Turnbo had chronic psychosis.

Applying the above principles, Dr. Crane testified that it was difficult for Turnbo to focus and that she was often vague about things. He also found that Turnbo was poorly oriented and easily confused. Dr. Crane further stated that Turnbo's ability to concentrate was poor and that her insight and judgment were extremely poor. He further stated that Turnbo was a poor historian.

Dr. Crane did more than discuss schizophrenia in general terms. He specifically diagnosed Turnbo as having schizophrenia and discussed the symptoms she exhibited. Dr. Crane sufficiently related his expert opinion to Turnbo based on his personal examinations of her during the year and a half

prior to trial. Dr. Crane not only testified as to the general symptoms that schizophrenics experience, he addressed the particular conditions of Turnbo. We find no abuse of discretion.

Turnbo next argues that Dr. Crane's testimony should not have been introduced to attack her credibility.

■ "A person who, at the time of production for examination, understands the nature of an oath and demonstrates a mental capacity sufficient to observe, recollect, and narrate the things heard and seen is competent to testify." *State v. Johnson*, 714 S.W.2d 752, 758 (Mo.App.1986).

■ While the determination of a witness's competency to testify is for the trial court, the credibility of a witness's testimony is for the fact finder to determine. *Clark v. Reeves*, 854 S.W.2d 28, 30 (Mo.App.1993). Credibility means the capacity for being believed or credited. *Marvin E. Nieberg Real Estate Co. v. Taylor–Morley–Simon, Inc.*, 867 S.W.2d 618, 626 (Mo.App.1993).

■ Generally, anything which has the legitimate tendency of throwing light on the accuracy, truthfulness, and sincerity of a witness, including facts and circumstances, is proper for determining the credibility of a witness. *Roberts v. Emerson Electric. Mfg. Co.*, 362 S.W.2d 579, 584 (Mo.1962). Mental incapacity is a factor in assessing a witness's credibility. *See State v. Pierson*, 337 Mo. 475, 85 S.W.2d 48, 55 (1935); *State v. Weber*, 844 S.W.2d 579, 581 (Mo.App.1992).

The modern trend "is to avoid treating [mental conditions] as a cause of total incompetency, except in extreme cases, and to admit the person as a witness, leaving the defect in question to have whatever weight it deserves as discrediting the witness's powers of observation, recollection, or communication." 3A J. Wigmore, *Evidence*, § 931 (Chadbourn rev. 1970).

■ Thus, the fact that the trial court found Turnbo competent to testify does not preclude evidence of her schizophrenia for the jury's assessment of her credibility.

■ Turnbo further argues that Dr. Crane's deposition is inadmissible because his opinions regarding her ability to perceive and recollect events were not related to her capacity at the time of injury or at the time of trial.

■ The existence of mental defect may be shown to discredit a witness if it affected the witness at 1) the time of the incident testified to, 2) while he is on the stand, or 3) in the interim, so as to cripple his powers of recollection. *State v. Pinkus*, 550 S.W.2d 829, 840 (Mo.App.1977). The expert's observation of the witness, however, should be sufficient for the expert to form a reasonably certain opinion. *Id.*

Dr. Crane explained that schizophrenia is a chronic condition that cannot be cured. He stated that Turnbo had demonstrated recurrent symptoms and psychotic episodes. During the initial consultations in 1994, Dr. Crane testified that Turnbo was unable to give an accurate description of what happened to her in the past due to her inability to relate accurately her past medical history. It was Capra who told Dr. Crane that Turnbo had a long psychiatric history and had been previously hospitalized at St. Vincent's and St. Louis State Hospital.

Although Dr. Crane had no personal acquaintance of Turnbo prior to January 4, 1994, he stated that she most likely suffered from schizophrenia on November 12, 1990. Dr. Crane based this opinion on the fact that Turnbo appeared schizophrenic during his initial examination of her and the fact that Turnbo had a long history of psychiatric problems and treatment according to her sister.

Dr. Crane's testimony sufficiently established that Turnbo's powers of recollection were affected by her schizophrenic condition based upon his examinations of her in the interim period between her fall and the time of trial. We find no abuse of discretion in admitting the psychiatrist's depositional testimony.

■ Turnbo next complains that Dr. Crane's deposition was irrelevant because he did not express his opinion within a reasonable medical certainty. Turnbo notes that

expert medical testimony which does not indicate that the expressed opinion is within a reasonable degree of medical certainty is insufficient. *Wagner v. Piehler,* 879 S.W.2d 789, 792 (Mo.App.1994).

During the deposition, Turnbo's counsel examined Dr. Crane and was present during the City's cross-examination of the psychiatrist. Turnbo's attorney raised no complaint as to the questions asked by the City nor to the responses by Dr. Crane. Rule 57.07(d)(3)(B) provides:

> Errors and irregularities occurring at the oral examination in the manner of taking the deposition, *in the form of the questions or answers,* in the oath or affirmation, or in the conduct of parties and errors of any kind which might be obviated, removed or cured if promptly presented, *are waived unless seasonable objection thereto is made at the taking of the deposition.* (emphasis ours)

Turnbo's present objections assert defects that could have been easily obviated. A party who fails to object at a deposition that questions and responses were not framed in terms of "reasonable medical certainty" waives the objection. *Schiles v. Schaefer,* 710 S.W.2d 254, 262 (Mo.App.1986).

In *Schiles,* two defendants contended that the trial court erred in permitting plaintiff to read from the deposition of a physician's answers to questions asked by defense counsel because the questions and responses were not framed in terms of "reasonable medical certainty." *Id.* at 262. Our court held that since the defendants did not object to the questions or responses at the deposition, the defendants waived their present objection at trial. *Id.*

Turnbo had every opportunity to inquire whether the expert's opinion was based on reasonable medical certainty, and by failing to do so or to timely object, she waived her objection. Our review of the record reveals no abuse of discretion.

Turnbo's final claim of error is that Dr. Crane's deposition amounted to a comment on her veracity and thereby invaded the province of the jury. Turnbo complains that the following testimony was improper:

Q: [City's attorney] Do you know sitting here today one way or another whether she could give—strike that. Do you know sitting here today one way or another she could distinguish between truth and falsity in recounting events that happened to her in the past?

A: [Dr. Crane] Well, if I can rephrase what you're saying, are you asking if—whether I feel the history that she gives me is accurate and believable?

Q: [City's attorney] Well, let me ask that question then.

A. [Dr. Crane] I would have to say it's very questionable because of the fact that she has chronic psychosis.

Q: [City's attorney] How does that affect her ability to give you an accurate history, or accurately relate what has happened to her?

A: [Dr. Crane] Well, by definition, psychotic folks are not able to distinguish reality from unreality.

Turnbo contends that this portion of Dr. Crane's testimony was a direct comment on her veracity and therefore invaded the province of the jury. She cites cases from other jurisdictions which essentially hold that an expert cannot directly comment on a witness's veracity. *See e.g., Ochs v. Martinez,* 789 S.W.2d 949 (Tex.App.San Antonio 1990) (expert opinion about truthfulness of witness usually not allowable because it invades province of jury).

Missouri courts have long held that a witness should not give his or her opinion upon the truth of a statement by another witness. *Stone v. City of Columbia,* 885 S.W.2d 744, 746 (Mo.App.1994) (citing *Holliman v. Cabanne,* 43 Mo. 568, 570 (1869)). Although it is not proper to present testimony that in one witness's opinion another witness is or is not telling the truth, a witness may testify to facts which if believed by the jury would have the effect of discrediting the witness before the jury without invading the province of the jury. *Stone,* 885 S.W.2d at 747 (citing *Fries v. Berberich,* 177 S.W.2d 640, 643 (Mo.App.1944)).

In *Fries,* the court held that a psychiatrist's testimony regarding a witness's ability

to remember an accident was properly admitted. *Id.* at 644. The defendant in *Fries* was involved in an automobile accident which rendered him unconscious for eight days. *Id.* at 643. At trial, defendant testified that he remembered traveling a mile before the accident, but after that he recalled nothing. *Id.* A psychiatrist testified that he believed that the defendant was capable of remembering the time of the accident. *Id.* The defendant appealed stating that the psychiatrist's testimony invaded the province of the jury. *Id.* Our court held that the psychiatrist's testimony did not directly comment upon defendant's veracity or credibility, but addressed defendant's power of recollection. *Id.*

In *State v. Williams*, 858 S.W.2d 796 (Mo. App.1993), our court addressed whether an expert witness could directly comment with respect to the truthfulness of a witness in a criminal case. Therein, defendant was charged with sexually abusing her seven year-old cousin. *Id.* at 798. Defendant argued that the trial court erred in allowing an expert to testify that children rarely lie about being sexually abused. *Id.* at 800. The court held that the expert's testimony regarding the truthfulness of the seven year-old victim was prejudicial and invaded the province of the jury. *Id.* at 801.

Dr. Crane's testimony, however, was not an opinion as to whether Turnbo's testimony was truthful. Unlike the expert in *Williams*, Dr. Crane did not testify that Turnbo could not be believed nor that she was lying. Further, Dr. Crane did not state that schizophrenics rarely tell the truth. Instead, he stated that schizophrenics have problems distinguishing "reality from unreality." Dr. Crane's opinion merely addressed Turnbo's abilities to perceive and recollect while suffering from schizophrenia; his opinion did not directly comment on Turnbo's veracity. His opinion did not remove from the jury the determination of what weight to give Turnbo's testimony, but merely provided the jury more information on which to make that determination. We conclude that the trial court did not abuse its discretion in allowing Dr. Crane's testimony.

Finally, Turnbo "opened the door" to Dr. Crane's deposition by introducing the issue of schizophrenia into the case in her opening statement. Turnbo's attorney informed the jury in his opening statement that "one of the issues for you to decide is whether or not [Turnbo's] testimony, given her medical condition of the schizophrenia from time to time, whether or not that can be relied upon."

In *Mische v. Burns*, 821 S.W.2d 117, 119 (Mo.App.1991), the court stated that "a party who opens up a subject is held either to be estopped from objecting to its further development or to have waived his right to its further development." Therein, the trial court allowed evidence of the defendant's drinking and driving after the accident and before trial, because the defendant's attorney opened the door by asking the defendant whether he had any problems drinking and driving. *Id.* at 118. Since the defendant opened the door to the subject of drinking and driving after the accident, the defendant was estopped from objecting to plaintiff's evidence to the contrary. *Id.* at 119. Here, Turnbo opened the door by injecting the issue of Turnbo's schizophrenia and the reliability of her testimony.

Additionally, Turnbo's counsel questioned her about her schizophrenia and her treatment with Dr. Crane. Having placed her schizophrenia in issue in her opening statement and in direct testimony, Turnbo cannot now on appeal complain about the introduction of related evidence in rebuttal or the explanation by City. *See Boyer*, 830 S.W.2d at 537.

■ Error, if any, by the trial court in admitting Dr. Crane's testimony is not grounds for reversal unless the evidence prejudices appellant or adversely affects the jury in reaching its verdict. *See Schumann v. Missouri Highway and Transp. Com'n*, 912 S.W.2d 548 (Mo.App.1995).

We find that Dr. Crane's testimony did not prejudice Turnbo or adversely affect the jury.

We must defer to the jury's assessment of both Turnbo's and Dr. Crane's testimony as the jury had the advantage of observing Turnbo's demeanor on the witness stand in

assessing her credibility. We recognize that the trial court had the opportunity to observe any alleged prejudicial effect of Dr. Crane's testimony and to take any steps to correct it if necessary. *See Copeland v. Compton,* 914 S.W.2d 378, 383 (Mo.App.1996). Point denied.

Judgment is affirmed.

SIMON and KAROHL, JJ., concur.