729 A.2d 965

The **MAYOR AND CITY COUNCIL OF BALTIMORE**

v.

**Darla J. THEISS.**

**No. 123, Sept. Term, 1998.**

Court of Appeals of Maryland.

May 17, 1999.

William R. Phelan, Jr., Principal Counsel (Frank C. Derr, Deputy City Sol.; James L. Prichard, Asst. Sol., Dept. of Law, all on brief), Baltimore, for Appellants.

Kenneth W. Strong (Richard H. Keller, both on brief), Baltimore, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

Appellant Mayor and City Council of Baltimore appeals from a verdict entered in the Circuit Court for Baltimore City in favor of appellee Darla J. Theiss. Appellant claims the trial court erred in finding appellant waived its right to object at trial with respect to the admission of portions of the video-taped deposition of appellee's expert medical witness. The trial court ruled that, based upon the Court of Special Appeals' opinion in *Davis v. Goodman,* 117 Md.App. 378, 700 A.2d 798 (1997), appellant waived its objections made during the videotaped deposition because it failed to specify during the deposition the grounds for its objections. Appellant appealed to the Court of Special Appeals. This Court issued a writ of certiorari on its own motion before the intermediate appellate court heard arguments in the matter to address the important issue raised by this appeal.

### I. Facts

Appellee Darla J. Theiss fell and broke her ankle while walking to her car from a hardware store in the Brooklyn area of Baltimore. Appellee filed a civil action in the Circuit Court for Baltimore City seeking damages from the Mayor and City Council of Baltimore, appellant, for injuries she sustained as a result of the fall. A jury found in favor of appellee, awarding her $128,000 in damages.

Dr. Mark S. Myerson, M.D., was one of the physicians who treated appellee and was deposed on videotape as an expert medical witness for appellee. During the deposition, appellee's counsel questioned Dr. Myerson at great length about his opinion as to appellee's injuries, possible treatments available to her, which treatment he would recommend, and some estimates for the cost of the treatments. When eliciting Dr. Meyerson's testimony at the deposition, appellee's counsel often, but not always, failed to qualify questions seeking the doctor's opinion by asking whether his opinion was "within a

reasonable medical probability."[1] Appellant's attorney typically objected to the questions that lacked the "reasonable medical probability" language, usually simply by stating the word "objection" and without stating any grounds. After one question, appellant's counsel explained that he was "objecting to the form of the question." In a few other instances, appellant's counsel gave grounds for objections unrelated to this appeal. From the record, it appears appellee's attorney asked appellant's attorney only once for his ground for objection, for which appellant's attorney gave a brief explanation. This also was not related to the ground for the objections at issue here.

At the beginning of the trial, appellant presented its objections to the trial judge. Appellant stated that its ground for the objections was that the questions were not in proper form because "counsel [asked] the doctor for the expert opinion without framing it as an expert opinion with the proper terminology." The judge, based upon the Court of Special Appeals' holding in *Davis v. Goodman,* 117 Md.App. 378, 700 A.2d 798 (1997), found that appellant had waived the objections and overruled all objections except for one, which is not at issue in this appeal. The videotaped deposition was played to the jury and, as noted above, it found in favor of appellee.

■ Appellant presents the following question for review:
Did the trial court err in overruling [appellant]'s objections to deposition opinion questions, which would clearly have been improper if asked at trial, for the reason that counsel for [appellant] had not set forth his reasons for the objections during the deposition?
We hold that the trial court did not err and shall affirm.

## II. Discussion

■ The parties in this case rely mainly on the Maryland Rules governing deposition testimony and the Court of Special

---

1. It is unnecessary to address in this opinion the nature of and requirements for qualifying language in questions designed to elicit medical testimony.

Appeals' opinion in *Davis v. Goodman,* 117 Md.App. 378, 403–04, 700 A.2d 798, 810 (1997). Although application of the Maryland Rules clearly leads to the result we reach today, *see infra,* the common law of this State, in place long before the adoption of the rules, also supports our decision to affirm the trial court and our holding that, when objecting during a deposition to questions, answers, or any other error or irregularity that may be cured at the deposition, the objecting party must state the ground or grounds for the objection or the objection is waived.

## A. Maryland Common Law

As early as 1885, this Court recognized that the ground for an objection to deposition testimony must be stated at the taking of the deposition along with the objection so "that opportunity to change the form [of the question] might be given." *Brown v. Hardcastle,* 63 Md. 484, 495 (1885) (citing *Kerby v. Kerby,* 57 Md. 345, 361 (1882)). In *Brown,* the appellees objected at trial to certain testimony filed in the case because the question posed at the pretrial proceeding was leading. The trial court overruled the objection. We affirmed because appellees failed to state the ground for their objection when the question was asked during the pretrial proceeding, stating: "All the exceptions to the testimony because of the leading character of the interrogatories [2] are overruled, because, at the time the interrogatory was propounded, the ground of objection was not stated and noted, that opportunity to change the form thereof might be given." *Id.* In *Kerby,* the case cited and interpreted by the *Brown* Court, we advised that objections to the form of questions posed before a commissioner [3] must "be made at the time propounded, in order to

---

**2.** The term interrogatories, as we perceive its use in *Brown,* referred generally to questions. The style of the time was to use the word interrogatory in its general sense.

**3.** *Kerby* was a case for partition of real estate in which questions apparently were propounded before a commissioner.

give a chance for correction into admissible form." *Kerby*, 57 Md. at 361.[4] We held:

> So far as the interrogatories are alleged to be leading, and therefore exceptionable, the objection comes too late. Such objections being only as to form; are always required to be made at the time propounded, *in order to give a chance for correction into admissible form.* The objection should have been noted before the commissioner.

*Id.* (citations omitted) (emphasis added). It follows, therefore, that in depositions, in order to afford an opportunity for correction, the alleged problem must be sufficiently stated at the time the objection is made.

Over twenty-five years later, in *Doggett v. Tatham*, 116 Md. 147, 151, 81 A. 376, 378 (1911), we revisited the issue of objections to questions propounded during a deposition. The Court first described the issue in that case:

> The fourth exception raises a question with regard to which there is no exact adjudication in this State. The evidence of Charles A. Williams was being taken in Virginia under the provisions of section 16 of article 35 of the Code of Public General Laws. The plaintiff was represented at the taking of this evidence, but the defendant was not, and on the reading of the deposition, the 15th question was objected to upon the ground that it was leading, though no such objection appears to have been made or noted at the time when the testimony was taken. On behalf of the defendant it is urged that he was entitled at the hearing [in court] to object to the question on the ground of its leading character,

---

4. *Kerby* cited four cases in support of this proposition: *Baltimore and Ohio R.R. v. Shipley*, 39 Md. 251 (1874); *Jones v. Jones*, 36 Md. 447 (1872); *Smith v. Cooke*, 31 Md. 174 (1869); *Striker v. Todd*, 13 Serg. & Rawle, 13. *Shipley, Jones,* and *Cooke* were not clear as to whether grounds for objections need be given in order to preserve them for later proceedings, emphasizing instead the requirement that objections be made. It is not clear whether the stating of grounds for objections was at issue in these cases. In *Brown*, however, the Court, citing *Kerby*, which itself cited the earlier cases, clarified that objections *and the grounds therefor* must be proffered to preserve the objection for the trial court to rule on in later proceedings.

and that it was his first opportunity to object because of the expense to which the defendant would be subjected if compelled to be represented by counsel at the taking of foreign depositions.

*Id.* Disagreeing with defendant's argument and noting the purpose of requiring the objecting counsel to state the ground for the objection, the Court held:

> [I]t has long been the recognized rule in this State, that where a question was supposed to be objectionable upon this ground, the objection, *and the reason for it must be noted at the time [of the deposition ], in order to afford the party propounding the question an opportunity to reframe it in such form that it would not be open to this objection.* The rule is a most salutary and wise one if any regard is to be had for the rules of evidence, and the mere question of convenience or expense to a party litigant can not be permitted to outweigh the enforcement of the general rule.

*Id.* (emphasis added). We have not overruled *Doggett, Brown,* or *Kerby.* Thus, this Court has required since at least 1885 that counsel objecting to questions asked during a deposition, which are curable, must provide the grounds for the objections during the deposition.

Our understanding of the common law is further supported by later cases that address the requirement at that time for stating the grounds for objections at trial. Prior to the enactment of Maryland Rule 2–517 (and its predecessors),[5] which provides that grounds for objection need not be given at trial unless requested, it appears that in order to preserve an objection made at trial, the grounds had to be stated even absent any request. In *Iron Clad Manufacturing Co. v. Stanfield,* 112 Md. 360, 386, 76 A. 854, 860 (1910), a bare objection was made to a question asked a witness. Although

---

**5.** Maryland Rule 2–517(a), which previously had been promulgated as Rule 522 and, prior to that, Court of Appeals Rule 17, provides in part that "[t]he grounds for the objection need not be stated unless the court, at the request of a party, or on its own initiative, so directs."

it is not completely clear from the Court's opinion, it appears the question had been asked at trial. We stated:

> The record does not show that the grounds of the objection were stated when it was made but it is now [on appeal] contended that it was objectionable because it was leading and also because it asked the witness the very question that the jury were to decide.
>
> It is too late now to raise for the first time the objection that the question was leading. That should have been raised below when the question was asked so that the examining counsel could have put the inquiry in a proper form if he desired to do so. *Poe's Practice,* sec. 274; *Brown v. Hardcastle,* 63 Md. [at] 495; *Kerby v. Kerby,* 57 Md. [at] 361.

*Id.*

In *Iron Clad Manufacturing,* we cited *Brown* and *Kerby,* both deposition cases, in holding that the grounds for objections must be volunteered, even at trial. We also cited *Brown* and *Kerby* approvingly in *Baltimore & Ohio Railroad Co. v. State ex rel. Black,* 107 Md. 642, 653, 69 A. 439, 443 (1908). In *Black,* we referred specifically to questions posed and objections thereto made at trial. We said:

> The ... exceptions [6] are all urged in this Court solely upon the ground that the questions objected to were leading questions, but it does not appear from the record that this ground of objection was made in the trial Court, no specific ground of objection being there made. We think the objec-

---

6. Apparently, a general exception was made at trial without specificity. The term "exception," as used in the 1908 *Black* case, was the formal method then used for attempting to preserve an adverse ruling for purposes of appeal. After an adverse ruling the aggrieved party asked the court clerk to note an exception to the ruling on the record. At the conclusion of the trial, all of the exceptions taken would constitute a Bill of Exceptions, which would form the basis for appeal. *See Montgomery County v. McNeece,* 311 Md. 194, 202–03, 533 A.2d 671, 675 (1987). The Court in *Black* was speaking in the context of a mere general objection and resulting general exception, holding that *unless made with sufficient specificity,* the exceptions did not, even then, preserve the issue for appeal.

tion to a question *as leading* should be made at the time it is put, and before it is answered. Mr. Poe so states the rule in *Poe's Practice,* sec. 261, and says, "The reason is that if such an objection had been made at the time the question was put, it could and probably would have been obviated, and it would not be fair therefore to spring such objections afterwards. This is especially the rule in cases where testimony is taken under a commission." To sustain this text he cites *Smith v. Cooke,* 31 Md. 174; *Jones v. Jones,* 36 Md. 447; *Kerby v. Kerby,* 57 Md. [at] 361 and *Brown v. Hardcastle,* 63 Md. [at] 495. *Smith v. Cooke* was a case where the depositions were taken under a commission, and *Kerby v. Kerby* and *Brown v. Hardcastle* were equity cases, where the rule is established. *Jones v. Jones* was a case in the Orphans' Court where the testimony was taken before lay Judges. We have not found a case where the testimony was taken orally at *nisi prius,* in which this question has arisen, but we perceive no reason why the rule should not be the same in such cases, and Mr. Poe plainly lends his authority to this view in the citation above. These exceptions therefore are not tenable on that ground.

By 1949, it was no longer necessary to proffer voluntarily at trial the grounds upon which objections were based. We said in *Baltimore Transit Co. v. State ex rel. Castranda,* 194 Md. 421, 438, 71 A.2d 442, 449 (1950), citing Court of Appeals Rule 17, which had been promulgated in 1945: "Under our present rules relating to appeals, it is ordinarily not necessary to state the grounds for an objection, unless requested by the trial court."

We addressed the old exceptions practice in *Montgomery County v. McNeece,* 311 Md. 194, 533 A.2d 671 (1987), in which we explained that Court of Appeals Rule 17 had changed only appellate procedural rules with respect to the Court of Appeals and that subsequent rule modifications were necessary to change the procedure for an appeal to an in banc circuit court. We first explained the common law exceptions practice:

The requirement of noting a contemporaneous exception in order to preserve a question for later appellate review was firmly ingrained in the common law. *See McCormick on Evidence* § 52, at 118–19 (E. Cleary 2d ed.1972). The reason for the rule of contemporaneous exception, and its interaction with the additional requirement that a Bill of Exceptions be prepared and signed, were set forth by Professor Milton D. Green in *Basic Civil Procedure*, 254–55 (2d ed.1979):

> The purpose of a Bill of Exceptions was to bring before the appellate court for review matters which otherwise would not appear on the common law record due to the fact that there were no court reporters to record the testimony and the proceedings at the trial. This was before the days of shorthand and recording devices. After the Statute of Westminster II if a litigant believed the court had erred in a ruling, he could make it a matter of record by "saving his exception." For example, if counsel had objected to a question asked of a witness and the court had overruled the objection and counsel thought the ruling was erroneous, he could say, "If the court please, I desire to save an exception to your honor's ruling." The judge was then obliged to stop the trial and call the scrivener who, with his quill pen, would make a record on parchment.... When this document was completed, it would be signed by the judge. During the course of the trial numerous exceptions might be "saved." At the conclusion of the trial they would be bound together and certified by the trial judge as the Bill of Exceptions in the case, and they would be attached to and become a part of the record on appeal. Today, with modern methods of court reporting, this antiquated method of preserving a record has become obsolete and court rules make "exceptions" unnecessary. (footnote omitted).

*Id.* at 202–03, 533 A.2d at 675 (alteration in original). The Court went on:

> With the advent of court stenographers and required verbatim accounts of trial proceedings, the need for contem-

poraneous exceptions ceased to exist. By the adoption in 1945 of Court of Appeals Rule 17, the "unnecessary and outmoded formalit[y]" of noting exceptions to rulings or orders of the court was ended. *Elmer v. State*, 239 Md. 1, 6–9, 209 A.2d 776 (1965). Rule 17 provided that:

> Formal exceptions to the rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

The language of Court of Appeals Rule 17 was later incorporated into Md. Rule 522, and in 1984 became part of Rule 2–517.

*Id.* at 204, 533 A.2d at 676 (alteration in original). The Court then discussed the rule's effect on in banc circuit court appeals:

> The modernization of appellate procedures accomplished by Court of Appeals Rule 17 and successor rules, while fully effective for purposes of ordinary appeals, had no effect on the procedure to be followed in appeals to in banc courts. Prior to 1984, Rule 510 remained in effect, specifically requiring the reservation of issues by means of exceptions. As a result, an outmoded procedure remained to unnecessarily complicate in banc appeals. Aggravating the situation was the fact that attorneys coming to the bar after 1945 were unfamiliar with the practice of noting formal exceptions to rulings or orders—a practice that had been second-nature to their predecessors. Because of the requirement that an exception be noted of record on the day the point or question was decided, in banc appeals were essentially unavailable in those cases in which a judge filed an order with the clerk and notified the parties by mail. Moreover, there was uncertainty concerning the time within which an

oral exception had to be reduced to writing and signed by the trial judge. See *Faber v. Wolfe,* 41 Md.App. 458, 397 A.2d 270 (1979), holding that an oral exception must be reduced to writing within a "reasonable time." *Compare Thomas v. Ford, supra,* 63 Md. [346] at 348 [(1885)].

Aware of these problems and taking cognizance of the footnote penned by this Court in *Washabaugh [v. Washabaugh], supra,* 285 Md. [393] at ·399, n. 6, 404 A.2d 1027 [(1979)], the Rules Committee of this Court recommended substantial revision of Rule 510 so that the procedure for taking an in' banc appeal would parallel, to . the extent possible, the procedure in taking an appeal to the Court of Special Appeals. Rule 2–551, effective July 1, 1984, provided, in pertinent part:

> When review by a court in banc is permitted by the Maryland Constitution, a party may have a judgment or determination of any point or question reviewed by a. court in banc by filing a notice for in banc review within the time prescribed by Rule 1012 for a filing of an appeal. Issues are reserved for in banc review by making an objection in the manner set forth in Rules 2–517 and 2–520.

*Id.* at 204–05, 533 A.2d at 676 (footnotes omitted).

As we shall indicate, *infra,* despite suggestions to the Rules Committee that preservation issues, as they relate to depositions, be made less stringent, those suggestions, unlike the issues relating to in banc circuit court appeals, have not been accepted or recommended; therefore, the common law rules have survived.

### B. Maryland Rules of Discovery

 The Court of Appeals, in its rule-making capacity, adopted uniform rules of discovery as part of the Maryland Rules in 1941. *See* 1941 Md. Laws, Chap. 719; *see also* Md. Rules 2–401 to 2–434. The Maryland Rules, including the rules relating to discovery, do not preempt the entire field of discovery procedure. Rather, common law principles not expressly inconsistent with the Maryland Rules should be ap-

plied in conjunction with the rules. *See Gardner v. Board of County Comm'rs,* 320 Md. 63, 80, 576 A.2d 208, 216 (1990) ("The revision of the Maryland Rules which became effective July 1, 1984, did not abrogate all of the case law of pleading and practice which theretofore existed at law and in equity, and the new Maryland Rules do not purport to state within their text the universe of Maryland pleading and practice law."). Nothing contained in the Maryland Rules is inconsistent with the common law rule stated in the cases we have discussed. Finally, the discovery rules are broad and comprehensive in scope and should be liberally construed. *See E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.,* 351 Md. 396, 405, 718 A.2d 1129, 1133 (1998); *Porter Hayden Co. v. Bullinger,* 350 Md. 452, 460, 713 A.2d 962, 966 (1998).

■ Turning to the relevant discovery rules, Rule 2–415(g) provides:

> All objections made during a deposition shall be recorded with the testimony. An objection to the manner of taking a deposition, to the form of questions or answers, to the oath or affirmation, to the conduct of the parties, or to any other kind of error or irregularity *that might be obviated or removed if objected to at the time of its occurrence is waived* unless a timely objection is made during the deposition. An objection to the competency of a witness or to the competency, relevancy, or materiality of testimony is not waived by failure to make it before or during a deposition unless the ground of the objection is one that might have been obviated or removed if presented at that time. [Emphasis added.]

Because the doctor's deposition testimony in the case before us was videotaped and used as testimony at trial, Rule 2–416(g), relating to videotaped and audiotaped depositions, and Rule 2–419(a)(4), relating to the use of all depositions, also apply. Rule 2–416(g) provides:

> The officer shall keep a log of all objections made during the deposition and shall reference them to the time shown on the clock on camera or to the videotape or audiotape

indicator. Evidence objected to shall be taken subject to the objection. A party intending to offer a videotape or audiotape deposition in evidence shall notify the court and all parties in writing of that intent and of the parts of the deposition to be offered within sufficient time to allow for objections to be made and acted upon before the trial or hearing. Objections to all or part of the deposition shall be made in writing within sufficient time to allow for rulings on them and for editing of the tape before the trial or hearing. The court may permit further designations and objections as justice may require. In excluding objectionable testimony or comments or objections of counsel, the court may order that an edited copy of the videotape or audiotape be made or that the person playing the tape at trial suppress the objectionable portions of the tape. In no event, however, shall the original videotape or audiotape be affected by any editing process.

Rule 2–419(a)(4) states: "A videotape deposition of a treating or consulting physician or of any expert witness may be used for any purpose even though the witness is available to testify if the notice of that deposition specified that it was to be taken for use at trial." The discovery rules relating to videotaped depositions do not supplant the general discovery rules; rather, they supplement those rules.[7]

---

7. We emphasize that Rules 2–416 and 2–419(a)(4) do not alter, unless expressly provided, Rules 2–411 to 2–415, which regulate generally the taking of depositions. The primary purpose of the videotape and audiotape provisions, as well as the provisions for depositions upon written questions, Md. Rule 2–417, and depositions by telephone, Md. Rule 2–418, is to expand the methods available for the taking of depositions. The videotape and audiotape rules provide for additional methods of taking depositions; they do not supplant the general rules or the underlying common law. Therefore, Maryland Rule 2–416(g) ("A party intending to offer a videotape or audiotape deposition in evidence shall notify the court and all parties in writing of that intent . . . within sufficient time to allow for objections to be made and acted upon *before the trial or hearing.*" (emphasis added)), requires a postdeposition, pretrial hearing for the court to rule on deposition objections. This is designed to replace in-court rulings on such objections. The videotape and audiotape rules are not a substitute for the common law requirement that the ground for an objection be made at the deposition

Rule 2–415 relates generally to deposition procedure and, as we stated above, subsection (g) mandates the manner in which and under what situations an objection should be made. The Rule, which has been revised several times, was derived from portions of former Rules 409, 411, 412, and 422.[8] Notwithstanding these several changes to the deposition procedure rule over the years, Rule 2–415(g) and its predecessor rules relating to objections have remained substantially the same. For example, former Rule 412 c. 2. provided:

> 2. Waiver Unless Seasonable Objection.
>
> An error or irregularity occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties and an error of any kind which might be obviated, removed, or cured if promptly presented, is waived unless seasonable objection thereto is made at the taking of the deposition.

The substance of this deposition objection rule has remained the same, despite several concerns raised in the past. The Court of Appeals Standing Committee on Rules of Practice and Procedure ("Rules Committee" or "Committee"), however, declined to recommend any responsive changes to those concerns. For example, minutes from various Rules Committee meetings relating to Rule 2–415(g) indicate that proposals for modifying the Rule have been considered. The minutes of a January 16, 1987, meeting of the Rules Committee indicate that the Committee was concerned in part with whether the regular deposition rules applied to videotaped depositions and whether the failure to object at the taking of a videotaped deposition constituted a waiver in light of the special videotape

---

itself or risk being waived for subsequent proceedings. Accordingly, the procedure for obtaining court rulings on objections made during depositions, such as those at issue here, generally apply only to objections properly preserved at the videotaped or audiotaped deposition by stating the ground upon which the objection is based.

**8.** The Maryland Rules were significantly updated, revised, and renumbered in 1984.

provisions that seemed to permit delaying objections until the postdeposition, pretrial hearing. A proposed change considered by the Committee appeared to concern whether the Rule required "curable" objections to be made at the deposition itself rather than later at the pretrial hearing:

Agenda Item 3. Consideration of a policy question regarding Rules 2–416(g) and 2–419(d).

---

Ms. Richards, Chairman of the Discovery Subcommittee presented the policy issue for the Committee's consideration. She informed the Committee that she had received a letter from Henry I. Greenberg, Esquire asking the Committee whether parties attending a videotaped deposition of an expert, intended for use at trial, must make all objections at the deposition as if they were at trial or the objections would be waived. Ms. Richards explained that the letter described a situation where certain objections, not made during the deposition, were raised for the first time before trial. The court allowed the objections relying on Rule 2–419(d) which provides in part that:

Subject to Rules 2–412(e), 2–415(g) and (i), 2–416(g), and 2–417(c), an objection may be made at a hearing or trial to receiving in evidence all or part of a deposition for any reason that would require the exclusion of the evidence if the witness were then present and testifying.

*Minutes of the Court of Appeals Standing Committee on the Rules of Practice and Procedure*, 33 (Jan. 16, 1987).

After quoting the videotape rule and Rule 2–416(g), there was discussion of when objections should be made under Rule 2–416(g). The minutes reflect that Committee member Mr. Melvin J. Sykes commented "that *except for curable objections*, a party is only required to make objections within a sufficient time before trial so that the court can rule on the objections. He further noted that the court may also allow objections after the trial has begun." *Id.* at 34 (emphasis added).

Mr. Albert D. Brault distinguished curable and noncurable objections, suggesting by implication, as had Mr. Sykes, that curable objections were to be made during the deposition. The minutes reflect the following:

Mr. Brault remarked that videotape depositions of out-of-state experts are used as a precautionary measure because trials are often subject to delays. He added further that flexibility in the rule is important, and that the rule should not require *non-curable* objections to be made during the course of the deposition.

*Id.* at 35 (emphasis added). The Rules Committee decided no change to Rule 2–416(g) was necessary.

Additionally, comments on file with the Rules Committee relating to Rule 2–415(g) reflect that the Committee considered certain comments presented by James A. Biddison, Jr. Mr. Biddison suggested Rule 2–415(g) be changed to provide that there would not be a waiver of an objection even if no objection were made during the deposition. He proffered that the practice of requiring objections at depositions in order to preserve them for trial caused depositions "to get bogged down and go off on a tangent and are broken up by countless objections. It is not like a situation in Court where you have a Judge to rule on such objections." *Comments to the Court of Appeals Standing Committee on the Rules of Practice and Procedure on Maryland Rule 2–415(g)* (Comment No. 58, James A. Biddison, Jr.) (on file with the Rules Committee). The Rules Committee declined to adopt Mr. Biddison's proposal or recommend it to the Court.

The history of Rule 2–415 reveals other instances in which the Rule was reviewed and approved without substantive change. As noted in a 1973 Rules Committee meeting, for example, the Rules Committee considered several suggestions by the Baltimore Gas and Electric Company, including the recommendation "that Rule 413 b be amended in an effort to discourage attorneys from objecting during the taking of depositions." *Minutes of the Court of Appeals Standing Committee on the Rules of Practice and Procedure*, 3–4 (June

19, 1973). The Committee "reasoned that such action would not have the desired effect and therefore voted to [recommend] no change. It was also felt that the matter was covered by Rule 412 c which is a proper place for the subject." Maryland Rule 412 c. 2. contained language similar to the present rule, *see supra*. *See also Minutes of the Court of Appeals Standing Committee on the Rules of Practice and Procedure*, 18 (Sept. 12, 1980) (noting the Rules Committee's approval of former Rule 2–404(j)(3)(B), a predecessor to present Rule 2–415(g), with only an attempt to improve the style and language). Although these comments and minutes clearly are not determinative, they do lend some guidance as to the issues brought to the Rules Committee's attention and its ultimate decision to decline to recommend any such changes to the deposition procedure rule. It is clear that as far back as 1973, the Rules Committee declined to recommend weakening the provisions concerning the waiver of objections at depositions.

The Court of Special Appeals, as we have mentioned, examined Rule 2–415(g) and the rules relating to videotaped depositions in *Davis v. Goodman*, 117 Md.App. at 396–404, 700 A.2d at 806–10, a case with facts strikingly similar to the case before us.[9] That case involved the videotaped deposition of a doctor. During the deposition, plaintiffs' counsel objected to many of the questions asked by opposing counsel, usually stating only "objection" or "objection, move to strike." At trial, plaintiffs' counsel stated that the ground for his objections was that the questions were not in proper form because the doctor was asked to express his opinion, but was not asked whether his opinions were based on a "reasonable degree of medical probability." *Id.* at 397, 700 A.2d at 807. The judge

---

**9.** In *Goodman*, 117 Md.App. at 403 n. 6, 700 A.2d at 810 n. 6, the Court of Special Appeals stated in footnote 6 that the parties had not directed it to any appellate decisions, other than *Collom v. Pierson*, 411 N.W.2d 92 (N.D.1987), that discuss the issue of whether a party objecting to a question, answer, or irregularity at a deposition must specify grounds for the objection. *Doggett, Brown,* and *Kerby, supra,* appear to have addressed the issue and, moreover, have not been overruled.

overruled the plaintiffs' objections, stating that "to preserve an objection as to the form of a question the objection at deposition must be specific so that opposing counsel would have an opportunity to correct his mistake(s)." *Id.*

The Court of Special Appeals affirmed the trial court, holding that in order

> to preserve a deposition objection to any error or irregularity that might be cured if a timely objection had been made at deposition, the objecting party must state the ground for the objection before the conclusion of the deposition, so that the opposing party will have a chance to cure or obviate the error or irregularity.

*Id.* at 403–04, 700 A.2d at 810. That court gave several reasons for its holding, but most persuasive was the notion that

> Rule 2–415(g) shows that the reason an objection to a defect [in any question or answer that can be immediately cured] must be made, in a timely fashion, during the deposition is so that the questioner will have an opportunity, during the deposition, to clear up the problem. The drafters of the rules did not wish a litigant to be prejudiced by a slip of the tongue or any other error that could be easily cured. If it were sufficient merely to utter the word "objection" when some flaw exists in a question or answer, that purpose oft-times would not be fulfilled. For instance, a questioner, even if he or she is a well-trained lawyer, may not know what "error or irregularity" needs correcting if a specific objection is not made. At deposition, attorneys can, and often do, object to questions for invalid reasons or for no reason at all. Moreover, counsel, although they are not required to do so, often object to questions or answers (e.g., answers containing hearsay) where the error or irregularity could not possibly be corrected even if the problem were brought to the attention of those in attendance at the deposition. Given these well known realities, the interpretation of Maryland Rule 2–415(g) advanced by appellants would allow counsel at deposition to interpose scores of non-

specific and frivolous objections and then interpose a valid objection to a defect in a question that could be immediately cured. The barrage of frivolous objections might well cause an opponent to overlook the defect in a question or answer that was immediately curable. Such an interpretation would not fulfill the purpose of the rule and would run afoul of the requirement that the Maryland Rules be interpreted to secure fairness in administration.

*Id.* at 400–01, 700 A.2d at 808–09 (brackets in original).

In reaching its holding, the Court of Special Appeals recognized that one of the primary goals of Rule 2–415(g) requiring the objecting party to specify the ground for his or her objection to the curable errors and irregularities described in that rule is to provide the questioner the opportunity to obviate the mistake while the deposition is taking place. Indeed, in all of the previous versions of Rule 2–415(g), the language requiring an objection to be made for any error "that might be obviated or removed if objected to at the time of its occurrence" remains constant. Implicit in this language is the purpose of making specific objections: to correct the problem at that time. Although the ground for the objection may be obvious to both parties when the objection is made, often it may not or there might be multiple grounds for the objection. For instance, a question may be objectionable in form, such as in the case *sub judice,* and quickly curable by the questioner rephrasing the question. At the same time, the question also may be irrelevant and not immediately curable and therefore a matter properly to be ruled upon later by the trial court. The questioning counsel may recognize the relevancy problem but not the problem as to form. Had the objecting party simply advised the questioning counsel of the ground of the objection, such as stating, "Objection; improper form of questioning a medical expert," the questioning counsel might have cured the defect by rephrasing the question, thus saving valuable time and resources prior to or during trial.

Even more important, unless an objector states with some specificity the nature of his objection, rather than mim-

icking the general language of the rule, *i.e.,* "objection to the form of the question," it is impossible to determine, based upon the transcript of the deposition itself, whether the objection was proper when made or merely frivolous. In other words, when addressing the waiver issue, that is, whether the objection would have been curable if it had been properly objected to and the ground stated, the trial judge normally is limited to the ground for the objection made at the point in time when the deposition took place and cannot consider a new reason given some months later at trial. The trial judge's waiver determination depends upon whether, at the time the objection was, or could have been, made, the objectionable matter was curable or noncurable. If the matter was curable and the nonquestioning party either failed to object, or failed to specify the basis of the objection, the matter is waived. If the matter was curable, properly objected to with the ground specified, and not cured during the deposition, the objection is preserved. Therefore, the issue of waiver is frozen at the time of the deposition. In order for the trial judge to determine whether the ground for objection was "one which might have been obviated or removed if presented" during the deposition, a sufficient foundation for an objection necessarily must have been proffered in order for the trial court to determine later whether the question or irregularity could have been cured at the time of the deposition. Unless specific grounds for objections are proffered at the deposition, the Rule cannot operate as it was intended: to permit at the deposition the curing of objectionable questions or other irregularities. Were we to change the common law and hold that grounds need not be stated at the deposition, the objecting party would be afforded months or years before the trial commences, in which he or she would have an opportunity to think up legitimate grounds for the objection when, at the time it was made, such grounds were not obvious or intended.

The requirement that an objecting attorney state the ground or grounds for an objection at a deposition also promotes the policy considerations behind the rules relating to videotaped testimony and videotaped expert witness testimo-

ny. In 1980, this Court amended the Maryland Rules to provide for discovery rules specifically governing the taking of depositions by videotape and audiotape recording devices. As discussed, *supra,* Rule 2–416(g) governs the technicalities for objections during a videotaped deposition and Rule 2–419(a)(4) provides that the videotaped deposition of a physician or any expert witness may be used for any purpose at trial, regardless of that witness' availability. Regarding its recommendations with respect to adopting videotaped deposition rules, the Rules Committee minutes reflect that it strove to promote the use of videotaped depositions in an effort to keep litigation costs to a minimum and for the economy and convenience of the courts, parties, and expert witnesses. For example, one individual expressed an opinion that

> permitting videotape depositions probably would work to the advantage of less wealthy parties by making experts more available to them, in that an expert would generally be more willing to testify in his office or at some other non-court setting for a modest fee. Furthermore, less of the expert's time would be necessary to acquire his testimony.

*Minutes of the Court of Appeals Standing Committee on the Rules of Practice and Procedure,* 5–6 (Mar. 7 & 8, 1980). In a committee note to former Rule 413, as reflected in the Committee's Minutes, the Rules Committee stated:

> *The Committee believes that considerations of economy and convenience in arranging for medical and expert testimony, coupled with the ability of videotape to convey most of the information and impressions available from in-person testimony, justify the unrestricted use of videotape depositions as a substitute for "live" testimony from such witnesses.*

*Id.* at 12–13. It is clear the drafters of the discovery rules relating to videotaped depositions desired broad use of videotaped depositions in an effort to decrease the cost and time associated with traditional deposition practices.

Holding that counsel objecting to certain questions, answers, and otherwise curable irregularities in depositions need

not specify the grounds for his or her objections would limit the purpose and goals of the videotaped deposition rules and the discovery rules in general and lead to unnecessary delays and costs. For example, in the case at hand, appellant's counsel objected to the questions asked by appellee's counsel, but failed to specify the ground for his objection except on one occasion. This same bare objection was entered several more times at the deposition, and each time appellee's counsel failed to include the "reasonable degree of medical certainty" language to his subsequent questions. Appellant only argued to the trial judge that these objections related to form; that is, appellant stated for the first time at the postdeposition, pretrial hearing that appellee's counsel neglected to use language asking for the doctor's opinion within a reasonable degree of medical certainty. The error objected to by appellant is one of form because appellee's counsel did not ask the question using the language, or form, which appellant argues is required to elicit expert opinion. This is the type of objection contemplated under Rule 2–415(g). Had appellant specified the ground for his objection clearly enough so that appellee could have obviated the error, the question might have been corrected while the expert remained available. "[S]andbagging" an opposing counsel by attempting to defer the issue of the proper form of the question to a point in the process, immediately prior to the trial, when correction is necessary but the witness is not available to answer a new, properly framed question, are tactics contrary to the purposes for which the videotape deposition rules and Rule 2–415(g) were designed to address.

## III. Conclusion

We emphasize that the rule we espouse today is not new; the common law has recognized this procedure since at least 1855. The discovery rules codify policies and procedures that have been in effect for nearly 145 years. Therefore, we affirm the trial court and hold that in order to preserve a deposition objection to "the manner of taking a deposition, to the form of questions or answers, to the oath or affirmation, to

the conduct of the parties, or to any other kind of error or irregularity that might be obviated or removed if objected to at the time of its occurrence," Md. Rule 2–415(g), the party making the objection must state the ground or grounds for the objection with enough specificity that the attorney asking the questions can reasonably address the problem and cure or obviate the objectionable question, answer, or irregularity. Otherwise, the objecting party, as to that question, waives any objection to the admission of the question and answer at trial.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

RODOWSKY, J., concurs and files opinion joined by BELL, C.J.

RODOWSKY, Judge, concurring.

I write separately because I respectfully disagree with the analysis in the Court's opinion. In my view the Court has greatly enlarged Maryland Rule 2–415(g) beyond its text, beyond its proper construction, and beyond the way in which the circuit courts administer the rule and in which litigators apply it. Further, the Court bases its construction primarily on policy reasons that are debatable and that encroach on the adversary system.

Maryland Rule 2–415(g) reads:

"*Objections.* All objections made during a deposition shall be recorded with the testimony. An objection to the manner of taking a deposition, to the form of questions or answers, to the oath or affirmation, to the conduct of the parties, or to any other kind of error or irregularity that might be obviated or removed if objected to at the time of its occurrence is waived unless a timely objection is made during the deposition. An objection to the competency of a witness or to the competency, relevancy, or materiality of testimony is not waived by failure to make it before or during a deposition unless the ground of the objection is one that might have been obviated or removed if presented at that time."

Nowhere does the rule expressly require that the ground of objection be stated for those objections that would be waived if the objection is not made.

The self-evident purpose of the rule is to expedite depositions. There is no need to object at all "unless the ground of the objection is one that might have been obviated or removed if presented at that time." The general rule is that objections are not even required at a deposition; rather, they are deferred, to be made if and when the deposition testimony is offered in evidence in court. To add a requirement that the ground of the objection must be stated at the deposition prolongs the deposition.

Further, under the ordinary rules of construction, the meaning given part of a rule should be consistent with the rules as a whole. Rule 2–415(b) tells us that "[w]hen a deposition is taken upon oral examination, examination and cross-examination of the deponent may proceed as permitted in the trial of an action in open court." In open court, when an objection is made to the admission of evidence "[t]he grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs." Rule 2–517(a). Thus, if one looks beyond the literal wording of Rule 2–415(g) to the larger context, one is directed to a conclusion that is contrary to that espoused by the Court today.

In 1986 the Board of Governors of the Maryland State Bar Association approved discovery guidelines, and the guidelines were approved by the Conference of Circuit Court Judges. Annotated Code of Maryland (1999), 1 Md. Rules at 171. The Maryland Discovery Guidelines were revised by the Litigation Section of the Maryland State Bar Association in February 1990. *Id.* Although the Maryland Discovery Guidelines "are not officially part of the Maryland Rules and have not been adopted or approved by" this Court, we nevertheless arranged to have them reproduced as part of the introduction to Chapter 400 of Title 2 of the Maryland Rules because the "Guidelines, as revised, may be of significant value in interpreting and applying" Chapter 400. *Id. "Guideline 9: Objections at*

*Depositions"* states that "[a]ttorneys objecting to the form of the question at deposition are encouraged, if requested, to state the reason for the objection." This hortatory language is antithetical to a mandatory statement of grounds that the Court today reads into Rule 2–415(g).

Commentators on the Maryland Rules, as they relate to depositions, have not alerted practitioners to any necessity for stating the grounds of those objections that are required to be made at a deposition in order to avoid waiver. *See* P.V. Niemeyer & . L.M. Schuett, *Maryland Rules Commentary,* Rule 2–415, at 281–82 (2d ed.1992); P.W. Grimm, *Taking and Defending Depositions, A Handbook for Maryland Lawyers* § 5.4, at 46–47 (1991).

The majority opinion takes the position that references in *Doggett v. Tatham,* 116 Md. 147, 151, 81 A. 376, 378 (1911), *Brown v. Hardcastle,* 63 Md. 484, 495 (1885), and *Kerby v. Kerby,* 57 Md. 345, 361 (1882), to stating at a deposition the ground for objection are to be read into Maryland Rule 2–415(g), because those cases have not been overruled. Any such requirement, however, was eroded, in my opinion, by rules adopted by this Court on November 1, 1945. Md.Code (1939, 1947 Cum.Supp.), Appendix B. Rule 10(c)(1) of the rules relating to depositions of the General Rules of Practice and Procedure presented the substance of the last sentence of present Rule 2–415(g), while deposition Rule 8(a) of the then rules provided for oral examination of deponents to proceed as permitted at the trial. *Id.* at 2032, 2034. At the same time Rule 17 of the Rules of the Court of Appeals was added. In connection with preserving the record for appeal it provided that, "[u]nless requested by the court, it is not necessary to state the grounds for objections to evidence except in circumstances in which it would heretofore have been necessary to call attention to special grounds for objection." *Id.* at 1995.

In 1956, this provision in Rule 17 was moved to Rule 522 d 1 of the newly adopted Maryland Rules of Procedure, which provided, "[u]nless requested by the court, it is not necessary to state the grounds for objections to evidence." Md.Code

(1957) (adopted July 18, 1956; effective January 1, 1957). The Committee Note following Rule 522 explains the change from former Rule 17:

"The Committee eliminated the following words, following the word 'evidence' in subsection d 1: '... except in circumstances in which it would heretofore have been necessary to call attention to special grounds for objection.' This was the last part of the next to last sentence of Court of Appeals Rule 17."

In 1984, Rule 522 d 1 was incorporated into newly adopted Rule 2–517(a). Md. Rule 2–517(a) (1984 Repl.Vol.).

An additional complication in the majority's opinion arises from its repeated references to the City's objections as going to the form of the questions, as if the issue concerned the second sentence of Rule 2–415(g). Assuming that an objection to the form of a question may lie for some reason other than the question's leading nature, a question that seeks to elicit a medical opinion, without stating the standard of reasonable medical certainty (or probability) does not, in my opinion, present a defect of form.

The source of the problem is *Davis v. Goodman*, 117 Md.App. 378, 700 A.2d 798 (1997). In *Davis*, the Court of Special Appeals summarily concluded, based on an opinion of the Missouri Court of Appeals, that the above-described type of objection went to the form of the question. "An objection that questions put to an expert at deposition were not framed in terms of 'reasonable medical certainty' has been held to be an objection to form. *See Turnbo by Capra v. City of St. Charles*, 932 S.W.2d 851, 856 (Mo.App.1996)." 117 Md.App. at 397 n. 4, 700 A.2d at 807 n. 4. The *Davis* court did not cite any Maryland law, nor any other state or federal law, to support this statement.

In general, under Maryland law, expert medical witnesses are not required to render their opinions with the talismanic words "reasonable medical certainty" or "reasonable medical probability" in order for the opinion to be admissible. However, where expert opinion testimony is used to establish, for

example, proof of causation or damages, such evidence must be sufficiently probable and not be based on speculation or conjecture. *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 666, 464 A.2d 1020, 1026 (1983); *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 203–04, 167 A.2d 96, 99 (1961); *Ager v. Baltimore Transit Co.*, 213 Md. 414, 420–21, 132 A.2d 469, 472–73 (1957).

An expert who states the opinion with "reasonable medical certainty" or "reasonable medical probability" is, in effect, stating the degree of conviction with which the opinion is held. "This standard of 'reasonable' medical certainty, reflects an objectively well founded conviction that the likelihood of one cause is greater than any other; it does not mean the expert is 'personally certain' of the cause, or that the cause is discernable to a certainty." *Clifford v. United States*, 532 A.2d 628, 640 n. 10 (D.C.1987) (citation omitted).

An expert opinion that is not rendered with reasonable certainty or reasonable probability is not necessarily inadmissible. For example, the opinion may be admissible when, in conjunction with additional evidence, the combination amounts to sufficient probable proof of causation. *Charlton Bros. Transp. Co. v. Garrettson*, 188 Md. 85, 94, 51 A.2d 642, 646 (1947) ("The law requires proof of probable, not merely possible, facts, including causal relations. Reasoning *post hoc, propter hoc* is a recognized logical fallacy, a *non sequitur*. But sequence of events, plus proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause.").

Thus, a question that asks a medical witness for an expert opinion, without asking for the opinion to be stated with "reasonable medical certainty" or "reasonable medical probability," is not a question improper in its form and insufficient to elicit the expert opinion. Rather, such a question asks for an expert opinion that might not be stated with the requisite certainty or probability to be admissible, standing alone. Admissibility is a determination that is made by the trial court, Md. Rule 5–104(a). Consequently, by using the facts of this

case to require a statement of grounds, the Court has moved beyond the easily recognized leading question and, in effect, is applying the exception to the general rule in the last sentence of Rule 2–415(g) to a matter of substance. That raises a far-reaching policy question.

The policy reasons advanced in the majority opinion are fairly debatable, but I do not believe that we should engraft this new requirement on Rule 2–415(g) without having the Rules Committee expressly consider it, and without giving any opportunity to the Bar to comment on any such requirement. One of the persistent problems in deposition practice is the attorney who sets out to obstruct the deposition by interjecting repeated objections. The ultimate resort to control the obstructionist attorney, unfortunately, is an application for sanctions. Obtaining sanctions is difficult enough when the obstructionist attorney can attempt to justify the conduct complained of by pointing to the vagueness of the requirement that objections be made in order to avoid waiver where "the ground of the objection is one that might have been obviated or removed if presented at that time." The downside of the Court's new requirement is that it gives the obstructionist attorney even more ammunition, and more protection against sanctions, by requiring that grounds be stated. The path down which the Court today steers deposition practice also impacts the conscientious attorney. I can foresee attorneys, fearful that the rule of *von Lusch v. State,* 279 Md. 255, 263, 368 A.2d 468, 472–73 (1977), will be applied to the statement of grounds, advancing at the deposition every conceivable ground of objection that might be considered as one that might be obviated or removed at the deposition.

Finally, I am concerned that the majority opinion weakens the adversarial system. Under my interpretation of the requirements of Rule 2–415(g), the objecting attorney need only object, and the examining attorney has the choice of moving on or backfilling to correct any perceived deficiency. Given the elusiveness of the standard, "unless the ground of the objection is one that might have been obviated or removed if presented at that time," we should not impose on objecting

counsel the added burden of educating examining counsel on deficiencies in the testimony that has been elicited. Objecting counsel has a duty to object to then curable deficiencies in the examination, examining counsel has a duty to conduct the examination in a proper manner, particularly when the deposition testimony is to be used in lieu of live testimony at trial, and the court has a duty to rule on the objections, the grounds of which are stated when the parties are before the court.

In those instances in which objecting counsel chooses to state the ground for the objection in order to be cooperative, counsel undoubtedly does so because counsel has concluded that there is no detriment to the client. But objecting counsel should not be forced to assist opposing counsel in preparing the adversary's case, where objecting counsel concludes that the client's legitimate interests require that the deposition proceed in literal compliance with the Rule.

In the instant matter the difference between the majority's analysis and my analysis does not alter the result. The problem was cured when the deponent testified that all of the opinions that he had expressed were held to a reasonable degree of medical probability.

Chief Judge BELL has authorized me to state that he joins in the views expressed herein.