926 A.2d 736

**Alejandro RODRIGUEZ, et al.**

v.

**James N. CLARKE, et al.**

**No. 102 Sept. Term, 2006.**

Court of Appeals of Maryland.

May 31, 2007.

Reconsideration Denied June 12 and July 24, 2007.

40

Michael J. Baxter (Siobhan R. Keenan of Baxter, Baker, Sidle, Conn & Jones, P.A. of Baltimore; David A. Levin and Michelle R. Callender of Wharton, Levin, Ehrmantraut & Klein of Annapolis), for petitioners.

Angus R. Everton (Mary Alane Downs of Morgan, Shelsby, Carlo, Downs & Everton, P.A. of Hunt Valley), for petitioners

James N. Clarke (Joan L. Dietrich), of Macungie, PA, for respondents.

Argued before Bell, C.J., Raker, Cathell, Harrell, Battaglia, Greene and Alan M. Wilner, (Retired, specially assigned), JJ.

BATTAGLIA, J.

In this medical malpractice action, Respondents, James N. Clarke and his wife, Joan Dietrich–Clarke (the "Clarkes"), sued Petitioners, Alejandro Rodriguez, M.D., Sharin F. Engineer, M.D., Central Maryland Urology Associates, P.A., and Howard County General Hospital,[1] in the Circuit Court for Howard County. Three years after the complaint was origi-

---

1. The Petitioners also sued Dr. Camellus Okwochi Ezeugwu, and Just Heart Cardiovascular Group, Inc. The Circuit Court, however, granted summary judgment for those two parties early in the proceedings because there was no proof in the record that either Dr. Ezeugwu or Just Heart had ever treated Mr. Clarke, and that summary judgment is not at issue before this Court.

nally filed, and just two weeks before trial, the trial judge granted summary judgment to Petitioners. In concluding that judgment was appropriate as a matter of law, the judge determined that the Clarkes had failed to comply with multiple requests to arrange the deposition of their medical experts and that the Petitioners had been unable to depose any of those witnesses so that discovery had been thwarted. She concluded that the experts' testimony at trial would be barred, and without such testimony in support of their medical malpractice action, the Clarkes would be unable to sustain their burden of proof.

The Court of Special Appeals reversed the entry of summary judgment for Petitioners, who now present the following two questions for our review:

1. Whether a party may be permitted to violate Maryland Rule 2–402 in failing to appropriately identify expert witnesses because the lower trial court's scheduling order does not explicitly mandate that Rule 2–402 be followed.

2. Whether summary judgment should have been affirmed by the Court of Special Appeals given that the Court of Special Appeals identified a proper basis for summary judgment.

We granted certiorari, *Rodriguez v. Clarke*, 396 Md. 12, 912 A.2d 648 (2006), and shall reverse the decision of the Court of Special Appeals and hold that summary judgment was properly granted on behalf of the Petitioners.

## I. Background

On October 23, 2001, James Clarke went to the emergency room of Howard County General Hospital, Inc., complaining of nausea, vomiting and a sharp right-sided abdominal pain. A CT scan[2] confirmed that Mr. Clarke was suffering from a kidney stone, and he was scheduled for surgery the next day

---

2. "CT" is the abbreviation for a computed tomography, which is "imaging anatomic information from a cross-sectional plane of the body, each image generated by a computer synthesis of x-ray transmission data obtained in many different directions in a given plane." *Stedman's Medical Dictionary* 468, 1996 (28th ed.2006).

by Alejandro Rodriguez, M.D., a urologist employed by Central Maryland Urology Associates, P.A. While waiting to be examined by Dr. Rodriguez, Mr. Clarke experienced crushing chest pains, prompting the attending physician to order an EKG,[3] the results of which, Mr.Clarke was told, were normal.

During the morning of October 24, in preparation for the kidney stone procedure, Dr. Rodriguez ordered another EKG, which was interpreted by a cardiologist, George Steward Groman, M.D., a physician employed by HPV Heart, P.A. Later that same day, Dr. Rodriguez, as the attending urologist, performed the kidney stone procedure with the assistance of Dr. Sharin F. Engineer, an anesthesiologist, and the Hospital discharged Mr. Clarke a day later with directions to follow up with his primary care physician. On Christmas Day Mr. Clarke suffered a massive heart attack. He was initially taken to Saint Agnes Hospital, where the heart attack was confirmed, and then transferred to Union Memorial Hospital for by-pass surgery.

The Clarkes subsequently filed a complaint, through counsel, against Dr. Rodriguez and Central Maryland Urology Associates, P.A., Dr. Engineer and his partner, Dr. John C. Payne, and the Howard County General Hospital, Inc., with the Health Claims Arbitration Office. In the first count of their complaint, the Clarkes alleged that, in failing to notice that Mr. Clarke's EKG results were abnormal, the Petitioners breached the applicable standards of care in his treatment, which was the proximate cause of his massive heart attack, subsequent injuries, damages, and disability. In the second count of the complaint, the Clarkes also sued for loss of consortium.[4] In addition to the complaint, the Clarkes also

---

**3.** "EKG" is an abbreviation for an electrocardiogram, which is a "[g]raphic record of the heart's integrated action currents obtained with the electrocardiograph displayed as voltage changes over time." *Stedman's Medical Dictionary* at 619. An "electrocardiograph" is "[a]n instrument for recording the potential of the electrical currents that traverse the heart." *Id.*

**4.** On July 1, 2004, the Clarkes, through counsel, filed a stipulation of dismissal of the claim for loss of consortium.

filed, through counsel, a certificate of discovery verifying that interrogatories, requests for production of documents, and notices to take depositions were served on all parties.

The Clarkes, through counsel, amended their complaint in July of 2003, making the same allegations contained in their initial complaint and adding as defendants George Steward Groman, M.D. and HPV Heart, P.A., and also filed a notice of discovery stating that they had propounded interrogatories, requests for productions of documents, and a request to take the deposition of Dr. Groman. Without benefit of counsel, they amended their complaint for a second time in September of 2004, two years into the case, adding Thierno A. Diallo, M.D., and his company, Just Heart Cardiovascular Group, Inc., and Camellus Okwochi Ezeugwu, M.D., repeating the allegations made in their original and amended complaint.

The Clarkes' claim was removed from arbitration on May 3, 2002 and filed in the Circuit Court for Howard County on May 14, 2002. The case was originally assigned to the Honorable James B. Dudley and a trial date was set for September 17, 2003, but, due to conflicts in Judge Dudley's schedule, was postponed to October 15, 2003. The trial date was subsequently postponed two more times by consent of the parties, and the case was reassigned to the Honorable Diane O. Leasure. The Circuit Court also scheduled a pre-trial settlement conference, pursuant to Maryland Rule 2–504, on November 3, 2003, although that date also was postponed three times before the final scheduling order was issued on July 12, 2004. The final scheduling order established a trial date of August 22, 2005 and required that all of the Clarkes' expert witnesses be designated by September 30, 2004; that all the Defendants' expert witnesses be designated by November 30, 2004; that all rebuttal expert witnesses be designated by December 31, 2004; that all discovery be completed by May 30, 2005; and that all dispositive motions be filed by June 7, 2005.

The Hospital propounded interrogatories in which the Clarkes were asked for a list of the medical experts they

expected to call at trial and for a summary of their experts' opinions. The Clarkes responded that "[e]xpert witnesses will be identified in accordance with a Scheduling Order."

Counsel for Dr. Rodriguez, Dr. Engineer, Dr. Payne, and Central Maryland Urology also propounded interrogatories to the Clarkes and noted the depositions of both Mr. and Mrs. Clarke, as well as that of Dr. Shaughnessy, one of the experts designated by the Clarkes. In Dr. Engineer's interrogatories, he also asked the Clarkes to specify each expert witness they expected to call at trial and to describe the opinion each expert was to give, to which the Clarkes responded by referring to their expert designation, to be filed pursuant to the scheduling order.

Dr. Groman and HPV Heart subsequently answered the Clarkes' interrogatories and request for production of documents. Dr. Groman also propounded interrogatories and requests for production of documents to the Clarkes in which he also asked the Clarkes for a list of their expert witnesses and for a summary of their expert opinions, to which the Clarkes responded that "[e]xpert witnesses will be identified in accordance with the Scheduling Order."

On October 24, 2003, the Hospital filed a pre-trial statement in which two expert witnesses intended to be called at trial were designated, with the caveat that "[b]ecause [the Clarkes] have not made their experts available to testify at depositions, this Defendant reserves the right to designate additional experts, which it may call to testify at trial, after such time as [the Clarke s] make their experts available for deposition."

The Clarkes filed their Preliminary Designation of Expert Witnesses on December 29, 2003, which listed the following persons: Dr. Gary Vigilante, identified as an expert in the field of cardiology, located in Philadelphia, Pennsylvania; Dr. John D. Pigott, identified as an expert in the field of cardiovascular surgery, located in New Orleans, Louisiana; Dr. Allen Johnson, identified as an expert in the field of cardiology, located in La Jolla, California; Dr. Louis Mispireta, identified as an expert in the field of cardiovascular surgery, located

in Baltimore, Maryland; Dr. Thomas Shaughnessy, identified as an expert in the field of anesthesiology, located in Burlingame, California; Charles Smolkin, identified as an expert in the field of adult vocational rehabilitation, located in Baltimore, Maryland; Mona Yudkoff, R.N., identified as an expert life care planner, located in Bala Cynwyd, Pennsylvania; and Dr. Jerome Staller, identified as an expert economist, located in Philadelphia, Pennsylvania. After each expert designation, the Clarkes noted that the expert "will be provided for deposition at a mutually convenient date, time and location." The Clarkes filed, through counsel, a Pretrial Statement on July 6, 2004, identifying the same experts, with the addition of Dr. Michael M anyak, identified as an expert in the field of urology, located in Chevy Chase, Maryland.

On July 29, 2004, counsel for the Clarkes moved for leave to withdraw his appearance "[d]ue to facts and circumstances beyond counsel's control" and "irreconcilable differences that make counsel no longer able to proceed with this matter on behalf of the [the Clarke s]," which the judge granted. The Clarkes subsequently requested an extension of their deadlines to designate expert witnesses to December 31, 2004, to enable them to obtain new counsel, which the Circuit Court granted on August 12, 2004.

On August 16, 2004, Dr. Engineer, Dr. Payne, Dr. Rodriguez and Central Maryland Urology Associates, P.A., and the Hospital, as well as Dr. Groman and HPV Heart, P.A., together, filed motions to dismiss, alleging that the Certificate of Merit filed by the Clarkes did not comport with the requirements of Section 3–2A–04 (b) of the Maryland Courts and Judicial Proceedings Article, (1974, 2002 Repl.Vol.),[5] because it

---

**5.** Section 3–2A–04 (b)(1) of the Maryland Courts and Judicial Proceedings Article, (1974, 2002 Repl.Vol.), provides in pertinent part:

(b) Unless the sole issue in the claim is lack of informed consent: (1)(i) Except as provided in subparagraph (ii) of this paragraph, a claim filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the

contained only a blanket statement that failed to specify which individual health care providers breached the standard of care. The Clarkes, pro se, filed an opposition to the motion to dismiss, alleging that Section 3–2A–04 (b) did not require that the certificate of merit specify the name of each defendant in the case, and that *D'Angelo v. St. Agnes Healthcare, Inc.*, 157 Md.App. 631, 853 A.2d 813 (2004), *cert. denied*, 384 Md. 158, 862 A.2d 993 (2004), in which the Court of Special Appeals held that parties must specify the names of the alleged negligent healthcare providers, was filed after they had filed their initial complaint, and therefore, was not applicable to their Certificate of Merit. The Clarkes also filed, without the benefit of counsel, a Motion to Compel Discovery on August 27, 2004,[6] in which they alleged that the Hospital had failed to adequately respond to interrogatories that requested information regarding all of the physical examinations and tests performed at the Hospital and the results thereof and, more specifically, regarding what was done in the emergency room. In response, the Hospital alleged that it had properly provided all requested information. The Circuit Court denied the Clarkes' motion on December 4, 2004.

The Clarkes also filed, pro se, an Amended Preliminary Designation of Expert Witnesses on December 17, 2004, adding a tenth expert witness, Dr. Randolph Whipps, identified as an expert in the field of cardiology, located in Baltimore, Maryland.

On December 21, 2004, counsel for the Hospital sent a letter to the Clarke s requesting that they "[p]lease provide dates for the depositions of [their] expert witnesses immediately." On December 27, 2004, counsel for Dr. Rodriguez, Dr. Payne,

---

alleged injury, within 90 days from the date of the complaint. The claimant shall serve a copy of the certificate on all other parties to the claim or their attorneys of record in accordance with the Maryland Rules.

Section 3–2A–04 was amended without substantive changes in 2007, effective March 22, 2007. 2007 Md. Laws, Chap. 5 § 1.

6. The Clarkes subsequently filed two amended motions to compel, identical in substance to the original motion.

Dr. Engineer and Central Maryland Urology also sent a letter to the Clarkes requesting that they "[p]lease provide defense counsel with deposition dates for all experts identified in their amended preliminary designation of expert witnesses." On January 12, 2005, counsel for the Hospital sent a subsequent letter stating that "I have previously requested that you provide dates for the depositions of the expert witnesses whom you have designated . . . I have not yet received any dates," and requesting that the Clarkes "[p]lease provide them promptly." Counsel for the other Petitioners sent similar letters to the Clarkes on January 25, 2005, and February 2, 2005.

When the Clarkes failed to respond to any of the requests, the Hospital filed a Motion to Compel Discovery on February 25, 2005, three months before the discovery deadline, requesting that the Clarkes be compelled to provide deposition dates in light of the fast-approaching May 30, 2005 discovery deadline. Dr. Engineer, Dr. Rodriguez, Dr. Payne, and Central Maryland Urology also filed a motion to compel discovery on March 4, 2005, requesting that the Court order the Clarkes to identify deposition dates for their expert witnesses. Dr. Groman also filed a motion to compel on that day, adopting and incorporating the Hospital's arguments.

Although they did not respond to the requests to designate dates, the Clarkes did address letters to counsel for each of the Petitioners [7] requesting that they identify dates for the deposition of their expert witnesses. The Petitioners responded by informing the Clarkes that they would "be happy to provide you with deposition dates as soon as the depositions of the Plaintiffs' experts are scheduled."

The Clarkes, on their own, subsequently filed three separate motions to compel discovery, alleging that the Petitioners had failed to provide dates to depose their expert witnesses and

---

7. The Clarkes sent a letter to counsel for Dr. Rodriguez, Dr. Engineer, Dr. Payne, Central Maryland Urology, and the Hospital, on March 3, 2005, and another to counsel for Dr. Groman and HPV Heart on March 9, 2005.

requesting that they be ordered do so. The Petitioners opposed the Clarkes' motion to compel alleging that "the [Clarkes'] motion is filed in an attempt to shift the Court's attention away from the fact that Plaintiffs have refused to provide deposition dates for their expert witnesses to enable the Defendants to prepare a defense in this case," that they are "prepared to make its expert witnesses available for deposition as soon as counsel has had an opportunity to depose the Plaintiffs' expert witnesses," and that the Clarkes have not made a good faith effort to resolve discovery disputes as required by Maryland Rule 2–431.[8]

Finally, two months after the discovery deadline had passed, and one month before trial, Petitioners filed a Supplemental Motion to Compel Discovery, alleging that they had been severely prejudiced in their ability to prepare a defense by not having the opportunity to depose the Clarkes' experts, and requesting that the case be dismissed pursuant to Maryland Rule 2–433.[9] On July 11, 2005, the Honorable Diane O. Leasure of the Circuit Court for Howard County held a motions hearing, at which all parties were represented by counsel. Counsel for the Clarkes initially requested a postponement of the trial in order to give him an opportunity to become more familiar with the case, depose witnesses, and

---

**8.** Maryland Rule 2–431 provides:
A dispute pertaining to discovery need not be considered by the court unless the attorney seeking action by the court has filed a certificate describing the good faith attempts to discuss with the opposing attorney the resolution of the dispute and certifying that they are unable to reach agreement on the disputed issues. The certificate shall include the date, time, and circumstances of each discussion or attempted discussion.

**9.** Maryland Rule 2–433 provides in pertinent part:
(a) **For certain failures of discovery.** Upon a motion filed under Rule 2–432(a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including one or more of the following:
\* \* \*
(3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof.

otherwise prepare for the trial. Judge Leasure denied the motion, explaining:

> [T]here's just not any additional time that I can give, especially as it relates to the summary judgment motion and the motion to dismiss. Because, quite honestly, depending on the ruling on those motions, you might not need to go any further anyway until the certificate [10] issue is taken care of; so that's an issue that needs to be resolved and needs to be resolved now.

Counsel for the Clarkes thereupon withdrew his appearance, and the Clarkes represented themselves for the remainder of the hearing. Judge Leasure proceeded to hear argument from the Petitioners on their motions to compel discovery, whereupon counsel for the Hospital explained that, like the other Petitioners, he had propounded interrogatories to the Clarkes several years earlier, "[a]sking for a designation of experts to be called, the opinions they hold, and the basis for those opinions," but that the Clarkes' response to the interrogatory "was that expert witnesses will be identified in accordance with the scheduling order of this Court." When the Clarkes' expert designation was finally filed, however, "the description of their opinions was not forthcoming;" "[i]nstead, the designation stated that they would be produced for deposition." Counsel explicated that the failure of the Clarke's to respond fully to the Petitioners' interrogatories, in addition to their failure to supply dates for the depositions of their expert witnesses, warranted the sanction of dismissal.

Judge Leasure postponed ruling on the merits of the motions to dismiss and motions to compel discovery until Friday, July 15, in order to give the Clarkes an opportunity to file an amended Certificate of Merit comporting with the requirements set forth by Section 3–2A04 (b) of the Maryland Courts

---

10. This is in reference to the allegations in the Petitioners' motions to dismiss that the Clarkes' Certificate of Merit, required by Section 3–2A–04 (b) of the Maryland Courts and Judicial Proceedings Article, Maryland Code (1974, 2002 Repl.Vol.), to be filed by all plaintiffs in medical malpractice actions, was deficient in that it failed to specify which healthcare providers were negligent in treating Mr. Clarke.

and Judicial Proceedings Article. Before the Clarkes filed their Amended Certificate of Merit, the Petitioners filed a Motion for Summary Judgment alleging that "[the Clarkes] have failed to respond to numerous requests for deposition dates for their identified experts," and, "[s]ince the May 30, 2005 discovery deadline has passed and [the Clarkes] have no experts in this matter," "[the Clarkes] are unable to sustain their burden in this case."

The Circuit Court subsequently held another motions hearing on July 29, 2005, only two weeks before trial, to address the various motions to compel and motions for summary judgment. All parties again were represented by counsel at the hearing.[11] Counsel for Howard County General Hospital iterated its argument that, despite repeated requests, the Clarkes had repeatedly failed to cooperate in identifying dates for the depositions of their expert witnesses and, in light of the fact that it was now two weeks before trial, depositions could not be taken. Counsel for Dr. Rodriguez, Central Maryland Urology Associates, Dr. Engineer and Dr. Payne also contended that if another postponement were granted for the trial date, his calendar, and the calendars of the other counsel, would require a postponement of another year, which was not fair to any of the Petitioners. He further argued that the Clarkes had no expert testimony to meet their burden of proof, and because the discovery deadline had passed, no experts could be deposed without leave of court, which had not been requested. Counsel for Dr. Groman and HPV Heart added that the case had been in stasis for over three years at that point, that there had been several postponements, several amendments to the scheduling order, and changes to accommodate the departure of the Clarkes' counsel, and despite these attempts to accommodate the parties' schedules, the Clarkes had completely ignored the scheduling order, and therefore summary judgment was appropriate.

---

11. After the judge noted that the motion for summary judgment was not ripe for review because counsel for the Clarkes still had until close of business that day to file a response, counsel stated on the record that he was prepared to address the motion in court that day.

In response, the Clarkes' counsel argued that the Petitioners were at fault for not filing Notices to Take Depositions, and that there was no rule requiring the Clarkes to respond to letters regarding dates for depositions. Thus, the Clarkes' counsel argued that they had not failed to comply with any discovery rules and, without any failure, sanctions, such as dismissal, were not permitted under Maryland Rule 2–432. Further, the Clarkes' counsel posited that one of their experts, Dr. Shaughnessy, an anesthesiologist, had, in fact, been deposed,[12] and therefore should be allowed to testify.

After listening to oral argument, Judge Leasure concluded that, despite the Petitioners' good faith efforts to schedule the depositions of the Clarkes' expert witnesses, the Clarkes had totally failed to respond to those requests, and that it would be "prejudicial . . . two weeks before trial, at the very last minute, for [the Petitioners] to find out who the experts are going to be, and then to have to somehow—even though it should have been done long before now—try to take depositions." Judge Leasure, therefore, granted the Petitioners' motions for summary judgment finding that "there's no dispute as to any genuine fact, and the [Petitioners] are entitled to judgment as a matter of law, given the fact that this case requires expert testimony, and that has not been adequately presented."

After Judge Leasure issued her ruling, the Clarkes' counsel posed the question whether counsel for the Petitioners were disputing whether the deposition of Dr. Shaughnessy had been taken. Counsel for Dr. Rodriguez, Central Maryland Urology Associates, Dr. Engineer and Dr. Payne responded that, although they did not dispute that the deposition was taken, the testimony it proffered did not address all of the defendants in the case, that Dr. Shaughnessy had not indicated his agreement to testify at trial, and that he was never definitively designated by the Clarkes as an expert witness at trial. Counsel for the Hospital further added that they were just

---

12. The date of Dr. Shaughnessy's deposition, and the contents thereof, were not included as part of the record.

learning that Dr. Shaughnessy would definitely be called as an expert at trial, and that, before that point, Petitioners only were aware that he was on a preliminary list that was going to be reduced. Counsel for the Hospital continued by arguing that it was too late to announce during the hearing, two weeks before trial, that Dr. Shaughnessy was going to be called at trial. Judge Leasure then explicated for the parties that, in striking the Clarkes' expert witness testimony and entering summary judgment, she had stated that the Clarkes' expert witnesses were not "properly designated," and that "really is the basis of the ruling."

The Clarkes, pro se, subsequently filed a motion for reconsideration alleging that the constant rescheduling of the trial date, which the Clarke's alleged were all due to conflicts in the Judges' schedules, and the Court's denial of their motion to continue the trial date, inhibited their ability to represent themselves. The Circuit Court denied the motion. The Clarkes then filed an appeal, pro se, to the Court of Special Appeals. The intermediate appellate court reversed the summary judgment and determined, in an unreported opinion, that the scheduling order in this case did not require the parties to include "all information specified in Maryland Rule 2–402(f)(1)," [13] which requires parties to specify by interrogatories all expert witnesses to be called, the subject matter on which the expert is expected to testify, the substance of their findings, and their opinions based on those findings, and without this requirement in the scheduling order, the Clarkes had not failed to comply with the scheduling order when they failed, in their interrogatory answers, to expound upon the

---

13. Rule 2–402(f)(1)(A) provides:

> Generally. A party by interrogatories may require any other party to identify each person, other than a party, whom the other party expects to call as an expert witness at trial; to state the subject matter on which the expert is expected to testify; to state the substance of the findings and the opinions to which the expert is expected to testify and a summary of the grounds for each opinion; and to produce any written report made by the expert concerning those findings and opinions. A party also may take the deposition of the expert.

subject matter upon which their expert witnesses were going to testify. The Court of Special Appeals also held that the C larkes' failure to provide their experts for depositions did not constitute a breach of any Maryland Rule and asserted that the Petitioners could have filed notices to take the depositions and subpoenaed the various witnesses to attend. Thus, the intermediate appellate court concluded, absent any violation of the Maryland Rules, the Clarkes' expert witnesses should not have been stricken, and summary judgment should not have been entered for the Petitioners.

Before this Court, the Petitioners argue that, underlying the Circuit Court's grant of summary judgment was the judge's decision to strike the Clarkes' experts for their failure to comply with discovery requests. Further, Petitioners maintain that because medical experts were necessary for the Clarkes to sustain their burden of proof, they could not establish a prima facie case of medical malpractice, and summary judgment was warranted. In support, Petitioners cite *Aventis Pasteur, Inc. v. Skevofilax,* 396 Md. 405, 914 A.2d 113 (2007), in which this Court held that summary judgment is appropriate in medical malpractice actions where there are no expert witnesses to testify to the issues of standard of care and/or causation. Petitioners further contend that, in light of the Clarkes' complete failure to cooperate in the discovery process, the entry of summary judgment for the Petitioners was proper in light of the stated goals of the Maryland Rules of Discovery to avoid protracted delays.

Conversely, the Clarkes, representing themselves, maintain that they did not violate any rules of discovery in this case because the Maryland Rules do not require parties to respond to letters; thus, the entry of summary judgment for the Petitioners was unwarranted. The Clarkes contend that there was no discovery violation here because the Petitioners never filed notices to take the depositions of the Clarkes' expert witnesses identifying the date, place and time for the depositions. The Clarkes assert that the sanctions provided in Maryland Rules 2–432 [14] and 2–433 apply only when a party

---

14. Maryland Rule 2–432 provides in pertinent part:

actually notes a deposition and a witness fails to appear. The Clarkes argue that it is the Petitioners who have violated the discovery rules by filing their motion for summary judgment well after the scheduling order's deadline for filing dispositive motions. Further, the Clarkes allege that, under this Court's holding in *Broadwater v. Arch*, 267 Md. 329, 297 A.2d 671 (1972), we have not permitted summary judgment to be granted for failure to comply with the discovery rules. The Clarkes further posit that, even if summary judgment was a permissible sanction, pursuant to the holding in *Lakewood Engineering & Manufacturing Co. v. Quinn*, 91 Md.App. 375, 604 A.2d 535 (1992), it should only be awarded when there has been a willful or contumacious discovery violation, which the Clarkes contend is lacking on their part.

The Petitioners rejoin that the Clarke's reliance on *Broadwater* is misplaced in light of this Court's more recent holding in *Aventis Pasteur, Inc.*, 396 Md. at 405, 914 A.2d at 113, in which we determined that summary judgment was appropriate when the plaintiff had failed to designate expert witnesses to testify on the issue of causation. Petitioners argue that *Broadwater* is further distinguished from this case in that the *Broadwater* court recognized that expert witnesses may not have been necessary in that case for the plaintiffs to meet their burden of proof. Petitioners contend that, unlike *Broadwater*, expert witnesses are fundamental to the Clarkes' burden of proof in this case.

The Clarkes, however, maintain that *Aventis* is distinguishable from this case in that it addressed the issue of insufficient expert testimony to establish a prima facie case, not discovery sanctions, which is the gravamen of this case. The Clarkes

---

(a) Immediate sanctions for certain failures of discovery. A discovering party may move for sanctions under Rule 2–433(a), without first obtaining an order compelling discovery under section (b) of this Rule, if a party or any officer, director, or managing agent of a party or a person designated under Rule 2–412(d) to testify on behalf of a party, fails to appear before the officer who is to take that person's deposition, after proper notice, or if a party fails to server a response to interrogatories under Rule 2–421 or to a request for production or inspection under Rule 2–422, after proper service.

further argue that, unlike in *Aventis,* where the plaintiffs failed to identify any expert witness, the Clarke's in this case have identified numerous expert witnesses to be called at trial.[15]

## II. Analysis

This medical malpractice case implicates a triumvirate of expert witness discovery failings, beginning with the Clarkes' expert designation, progressing to their response to the interrogatories requesting information about their experts, and crescendoing in their failure to respond to the Petitioners' requests for depositions dates. We are called upon in this case to determine whether the Circuit Court properly sanctioned the Clarkes for their discovery violations by precluding all expert witness testimony, resulting in the entry of summary judgment for the Petitioners. Thus, our review is twofold—we must first determine whether discovery sanctions were appropriately addressed to the Clarkes, and if so, the Circuit Court properly granted summary judgment for the Petitioners.

### A. Sanctions

Undergirding the grant of summary judgment in this case was the Circuit Court's decision to preclude the testimony at trial of all of the Clarkes' expert witnesses based upon the Clarkes' failure to comply with the Petitioners' requests for discovery. Trial judges are vested with great discretion in applying sanctions for discovery failures. *N.*

---

15. We note that the Clarkes filed a motion on March 27, 2007, to supplement the record with copies of correspondence between counsel and Judge Leasure they allegedly did not receive. The record reflects that the Clarkes were represented by counsel at the time that the correspondence were sent and that copies of the correspondence were in fact mailed to the Clarkes' counsel.

The Clarkes also moved during oral argument before us to supplement the record with a multi-paginated document which had not been provided to Petitioners. We deferred ruling on the motion to supplement until after oral argument to give Petitioners the opportunity to respond, which they did, indicating that the supplementary material was already in the record.

*River Ins. Co. v. Mayor of Baltimore,* 343 Md. 34, 47, 680 A.2d 480, 486–87 (1996); *Starfish Condo. Ass'n v. Yorkridge Serv. Corp.,* 295 Md. 693, 712, 458 A.2d 805, 815 (1983); *Klein v. Weiss,* 284 Md. 36, 56, 395 A.2d 126, 137 (1978); *Mason v. Wolfing,* 265 Md. 234, 236, 288 A.2d 880, 881 (1972). Moreover, the decision to grant sanctions is not limited to cases in which the trial judge has found the discovery violations to be willful or contumacious. *N. River Ins. Co.,* 343 Md. at 47, 680 A.2d at 486–87; *Lynch v. R.E. Tull & Sons, Inc.,* 251 Md. 260, 261, 247 A.2d 286, 287 (1968). We explicated in *Mason,* 265 Md. at 235, 288 A.2d at 882, that "[e]ven when the ultimate penalty of dismissing the case or entering a default judgment is invoked, it cannot be disturbed on appeal without a clear showing that this discretion was abused." *See also Kelch v. Mass Transit Admin.,* 287 Md. 223, 229, 411 A.2d 449, 453 (1980), quoting *Balt. Transit Co. v. Mezzanotti,* 227 Md. 8, 13–14, 174 A.2d 768, 771 (1961). Thus, we review the Circuit Court's determination of discovery sanctions under an abuse of discretion standard. *N. River Ins. Co.,* 343 Md. at 47, 680 A.2d at 486–87; *Starfish Condo. Ass'n,* 295 Md. at 712, 458 A.2d at 815.

 The discovery process is governed by Chapter 400 of Title 2 of the Maryland Rules. The fundamental objective of discovery is to advance "the sound and expeditious administration of justice" by "eliminat[ing], as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that gave rise to the litigation." *Mezzanotti,* 227 Md. at 13, 174 A.2d at 771. *See also Ehrlich v. Grove,* 396 Md. 550, 560, 914 A.2d 783, 790 (2007); *E.I. du Pont de Nemours & Co. v. Forma–Pack, Inc.,* 351 Md. 396, 405, 718 A.2d 1129, 1133 (1998); *Klein,* 284 Md. at 55, 395 A.2d at 137.

To secure access to expert witness information during the discovery process, options include the use of interrogatories pursuant to Rule 2–402(f)(1) and depositions, the logistics of which should be the subject of agreement, in order to forestall a waste of time and resources on the part of both litigants and

counsel. In the absence of such agreement, a formal Notice to Take Deposition would need to be issued pursuant to Maryland Rule 2–412(a).[16] When the deponent is outside of the State, the Maryland Rules provide that the deposition may be held in a foreign jurisdiction "in accordance with the law of the place where the deposition is held," Maryland Rule 2–413(a)(2); thus, the process becomes more complicated, requiring parties to take additional steps, including: subpoenaing the expert witnesses and securing a process server and, where necessary, retaining local counsel to enforce the subpoena; determining the date, time, and place and feasible location to hold the deposition; retaining a local court reporter and person capable of administering an oath in that jurisdiction; traveling to the foreign locale to take the deposition; and possibly pursuing through local counsel avenues to enforce the subpoena and compel the presence of the deponent. Moreover, should the deponent fail to appear, expenses of the aborted attempt may be shifted to either of the parties, depending on whether the deponent had been served successfully. Maryland Rules 2–434(a) & (b).[17]

---

**16.** Maryland Rule 2–412(a) provides:

**Generally.** A party desiring to take a deposition shall serve a notice of deposition upon oral examination at least ten days before the date of the deposition or a notice of deposition upon written questions in accordance with Rule 2–417. The notice shall state the time and place for taking the deposition and the name and address of the person to be examined or, if the name is not known, a general description sufficient to identify the person or the particular class or group to which the person belongs. If a subpoena is to be served on the person to be examined, it shall be served at least ten days before the date of the deposition.

**17.** Maryland Rule 2–434(a) & (b) provide:

**(a) Failure of party giving notice to attend.** If the party giving notice of the taking of a deposition on oral examination fails to attend and proceed and another party attends pursuant to the notice, the court may order the party giving the notice to pay to the other party the reasonable expenses incurred in attending, including reasonable attorney's fees.

**(b) Failure to subpoena witness.** If the party giving notice of the taking of a deposition of a witness fails to serve a subpoena upon the witness who for that reason does not attend and another party attends pursuant to the notice, the court may order the party giving

At the outset of the discovery process, "[u]nless otherwise ordered by the County Administrative Judge for one or more specified categories of actions, the court shall enter a scheduling order in every civil action." Maryland Rule 2–504(a). Subsection (b)(1) requires the court to set one or more dates by which each party shall file the notice concerning computer-generated evidence, by which all discovery must be completed, and by which each party shall identify each person whom the party expects to call as an expert witness at trial, including all information specified in Rule 2–402(f)(1). Rule 2–402(f)(1) requires a party to disclose a breadth of information relative to expert witnesses, including the identity of:

each person, other than a party, whom the other party expects to call as an expert witness at trial; to state the subject matter on which the expert is expected to testify; to state the substance of the findings and the opinions to which the expert is expected to testify and a summary of the grounds for each opinion; and to produce any written report made by the expert concerning those findings and opinions.

Maryland Rule 2–402(f)(1).

■ Albeit important tools to minimize discovery disputes and litigation delays, scheduling orders do not expand or limit the scope or content of discovery.[18] Judge Alan M. Wilner,

---

the notice to pay to the other party the reasonable expenses incurred in attending, including reasonable attorney's fees.

18. Rule 2–504 emanated from a report issued in the summer of 1991 of the Ad Hoc Committee on the Management of Litigation, a joint venture of the Court of Appeals of Maryland Standing Committee on Rules of Practice and Procedure and the Maryland State Bar Association. The Ad Hoc Committee was tasked with making recommendations to reduce the rising costs and delays in civil litigation, which were attributed to "unnecessary and abusive discovery." Report of the Ad Hoc Committee on Management of Litigation at 9 (1991). After studying the court systems in our sister states, the Ad Hoc Committee submitted a report to the Rules Committee making three recommendations: to develop differentiated case management systems; to adopt Rules 2–504 and 2–504.1, mandating scheduling orders and scheduling conferences, respectively, in certain cases; and to require automatic disclosure without the party having to request the information. The report of the

writing for this Court in *Dorsey v. Nold*, 362 Md. 241, 256, 765 A.2d 79, 87 (2001), elucidated that

> Rule 2–504 is not a discovery rule. It is not included in the Title 2, Chapter 400 rules on discovery and, except as provided in § (b)(2)(A), is not intended either to enlarge or constrict the scope of discovery. Its function, to the extent it references discovery in § (b)(1), is to provide for the setting of time limits on certain discovery events; it is, in that regard, a rule of timing, not of substance.

*Id.* at 256, 765 A.2d at 87. It is on this basis that we address the first certiorari question and disagree with the Court of Special Appeals in the panel's holding that a scheduling order's failure to reference Rule 2–402(f)(1) obviated the requirement that the Clarkes provide the subject matter on which each expert was expected to testify, the substance of the findings and the opinions and a summary of the grounds for each opinion, and to produce any written report made by the experts concerning his or her findings and opinions. Because a scheduling order could not expand or limit the scope of disclosure required by the Maryland Rules, the Circuit Court's failure to refer to Rule 2–401(f)(1) in a scheduling order cannot obviate Rule 2–504(b)(1)'s requirement that parties' preliminary expert designations provide all of the information enumerated in Rule 2–401(f)(1).

Should a party fail, at any stage in the discovery process, to cooperate in providing access to discovery information, Maryland Rule 2–433 provides that trial judges may issue any of the following sanctions:

> (1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;

---

Ad Hoc Committee was incorporated as part of the Rules Committee's One Hundred Twenty–Fourth Report to the Court of Appeals. One Hundred Twenty–Fourth Report of the Standing Committee on Rules of Practice and Procedure at 2–5 (March 24, 1993). We adopted the first and second recommendations, but rejected the automatic disclosure recommendation.

(2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or

(3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party.

Maryland Rule 2–434(a). Additionally, if the parties have filed a motion to compel discovery, the court may also, "[i]f justice cannot otherwise be achieved, ... enter an order in compliance with Rule 15–206 treating the failure to obey the order as a contempt." Maryland Rule 2–434(b).

Sanctions rarely come into play, however, when parties put forth good faith efforts to obtain and provide access to information needed to proceed to trial. This element of good faith, mandated by the Maryland discovery rules, is central to the entire discovery process. *See* Maryland Rule 2–401(c), entitled **Discovery plan** and stating that ("parties are encouraged to reach agreement on a plan for the scheduling and completion of discovery"); Rule 2–401(g), entitled **Stipulations regarding discovery procedure** and allowing parties to agree, (by stipulation, to modifications in the discovery rules when modifications would not cause a delay in scheduled court proceeding or timing specified in a court order); Rule 2–424(b), entitled **Response** and stating that, with respect to responses to requests for admissions of facts, "when good faith requires that a party qualify an answer or deny only part of the matter ..., the party shall specify so much of it as is true and deny or qualify the remainder."

The element of good faith also is interwoven in the Maryland Discovery Guidelines which, although not part of the Maryland Rules, have been recognized by this Court in *Mayor of Baltimore v. Theiss,* 354 Md. 234, 729 A.2d 965 (1999), as

valuable tools for practitioners to interpret and apply the discovery rules; we explained:

> In 1986 the Board of Governors of the Maryland State Bar Association approved discovery guidelines, and the guidelines were approved by the Conference of Circuit Court Judges. Annotated Code of Maryland (1999), 1 Md. Rules at 171. The Maryland Discovery Guidelines were revised by the Litigation Section of the Maryland State Bar Association in February 1990. Although the Maryland Discovery Guidelines "are not officially part of the Maryland Rules and have not been adopted or approved by" this Court, we nevertheless arranged to have them reproduced as part of the introduction to Chapter 400 of Title 2 of the Maryland Rules because the "Guidelines, as revised, may be of significant value in interpreting and applying" Chapter 400.

*Id.* at 259, 729 A.2d at 978–79 (citations omitted). The Guidelines were drafted in response to practitioners' concerns regarding discovery abuses seemingly not addressed by the Maryland Rules. Discovery Guidelines of the Maryland State Bar Association, Preamble (1989). Specifically, the Litigation Section Pleadings, Motions & Discovery Committee noted that most of the discovery problems "centered around problems with meeting discovery deadlines and late discovery requests" and proposed guidelines "encouraging attorneys to communicate early in the litigation to prepare a plan and schedule for certain discovery deadlines." *Id.* If adhered to, such schedules "would curtail abusive practice[s]" such as *"late naming experts* in routine cases." *Id.* (emphasis added). Guideline 4, *Delay in responding to Discovery Requests,* embodies the good faith requirement in its recommendation that "[a]ttorneys should make good faith efforts to respond to discovery requests within the time prescribed by the Court rules," as does Guideline 7, *Guidelines in Scheduling Depositions,* which encourages attorneys "to make good faith attempts to clear deposition dates with all opposing counsel or parties before noting a deposition." The Discovery Guidelines also reflect the requirement to put forth good faith efforts to resolve discovery disputes, as demonstrated by Guideline 10, *Discov-*

*ery Disputes,* which encourages attorneys "to communicate with each other to make every good faith effort to resolve discovery disputes without Court involvement."

The Rules governing the resolution of discovery disputes also reflect this Court's commitment to the requirement of good faith efforts at resolution:

A dispute pertaining to discovery need not be considered by the court unless the attorney seeking action by the court has filed a certificate describing the *good faith* attempts to discuss with the opposing attorney the resolution of the dispute and certifying that they are unable to reach agreement on the disputed issues. The certificate shall include the date, time, and circumstances of each discussion or attempted discussion.

Maryland Rule 2–431 (emphasis added). The import of Maryland Rule 2–431's good faith requirement is highlighted by its history. Its language derives from former Rule 417(g), **"Discovery by Interrogatories to Party . . . Gen'l,"** which provided:

No dispute relating to discovery by way of interrogatory need be heard by the court unless counsel requesting the hearing shall first *certify to the court in writing that after personal consultation and sincere attempts to resolve the differences with opposing counsel,* they have been unable to reach agreement on the disputed issues. No such efforts or certification shall be required with respect to any other form of discovery procedure provided for in Chapter 400 of these Rules.

Maryland Rule 417(g) (adopted Dec. 17, 1975; effective Jan. 1, 1976) (emphasis added). In 1980, this Court, recognizing that the "sincere attempts" provision of Rule 417(g) was integral to the entire discovery process, directed the Rules Committee to relocate the "sincere attempts" certificate requirement to Rule 422, **"Failure to Make Discovery—Sanctions,"** thereby making it applicable to the entire discovery process and to require that the certificate also set forth the date, time and place of each attempt. *See* Minutes of Rules Committee, November

18–19, 1977, and June 20–21, 1980. This Court subsequently adopted subsection (d) of Rule 422, providing that:

> No dispute relating to discovery need be heard by the court unless counsel requesting the hearing shall first certify to the court in writing that after personal consultation and sincere attempts to resolve the differences with opposing counsel they have been unable to reach agreement on the disputed issues. This statement shall recite, in addition, the date, time, and place of each consultation, and the names of all persons participating therein.

Maryland Rule 422(d) (adopted Oct. 1, 1980: effective Jan. 1, 1981).

During the revisory process of the Maryland Rules undertaken in the early 1980's, the subcommittee tasked with recodifying Chapter 400 of the Maryland Rules submitted numerous revisions of Rule 422, the first of which modified the "personal consultation" and "sincere attempts" language and provided:

> No dispute pertaining to discovery need be considered by the court unless counsel seeking action by the court shall first file a certificate describing the *good faith attempts to communicate with opposing counsel for the purpose of resolving* the dispute and certifying that they are unable to reach agreement on the disputed issues. The certificate shall include the date, time, and place of each *attempt to communicate* with opposing counsel and of each communication with opposing counsel.

Maryland Rules Committee, Notes of Style Subcommittee (Nov. 3, 1981) (emphasis added). The rule was later modified so that the "good faith attempts to *communicate*" became a requirement to make "good faith attempts to *discuss*," and "the date, time and place of each *attempt to communicate*" was changed to require the setting forth "the date, time and circumstances of each *discussion or attempted discussion.*" Maryland Rules Committee, Notes of Style Subcommittee (April 28, 1983). This Court adopted the Committee's second draft recommendations on April 6, 1984, and the new Rule 2–

431 became effective July 1, 1984. Although both the Rules and the Guidelines contemplated interaction between counsel for parties, the good faith obligation mentioned applies with equal force to a party who proceeds without the benefit of counsel.

■ In the present case, the discovery violations stem not only from the Clarkes' failure to make good-faith efforts to provide access to information about their expert witnesses, but also from their failure to make good-faith attempts to sincerely resolve the discovery dispute. The Clarkes' discovery failings began with their sparse preliminary expert witness designation, which was later amended and then supplemented by their pretrial statement. Through the collective breadth of three filings, the Clarkes only identified the names and municipal locations of ten expert witnesses who they intended to call at trial: Dr. Gary Vigilante, located in Philadelphia, Pennsylvania; Dr. John D. Pigott, located in New Orleans, Louisiana; Dr. Allen Johnson, located in La Jolla, California; Dr. Louis Mispireta, located in Baltimore, Maryland; Dr. Thomas Shaughnessy, located in Burlingame, California; Charles Smolkin, located in Baltimore, Maryland; Mona Yudkoff, R.N., located in Bala Cynwyd, Pennsylvania; Dr. Jerome Staller, located in Philadelphia, Pennsylvania; Dr. Michael Manyak, located in Chevy Chase, Maryland; and Dr. Randolph Whipps, located in Baltimore, Maryland. The Clarkes did not provide, however, any information regarding the content as to which the experts were expected to testify, the substance of their findings and opinions, nor a summary of the grounds for each opinion, the Clarkes also did not produce any written report made by the experts concerning their findings and opinions, as required by Rule 2–402(f)(1). The second arena in which the Clarkes failed to provide sufficient access to information was in their answers to the Petitioners' interrogatories regarding their expert witnesses, in which the Clarkes repeatedly failed to provide any information beyond referring to the list of experts' names and professions provided in their preliminary expert designation. The Clarkes also failed to cooperate in arranging the depositions of their ex-

perts—six of whom were out-of-state—despite repeated attempts by the Petitioners to obtain those dates. Further, although one of the Clarkes' expert witnesses had been deposed, the court concluded that the expert was never properly designated by the Clarkes as a witness to testify at trial until the motions hearing two weeks before trial. The Circuit Court therefore determined that, in light of the Clarkes' inobsequious response to Petitioners' discovery requests, the appropriate sanction for such flagrant discovery abuse was to preclude the testimony of the Clarke s' ten expert witnesses, as permitted by Rule 4–333(a)(2).

As we have stated heretofore, trial judges are vested with great discretion in applying sanctions for discovery failures. *N. River Ins. Co.*, 343 Md. at 47, 680 A.2d at 486–87; *Starfish Condo. Ass'n*, 295 Md. at 712, 458 A.2d at 815; *Klein*, 284 Md. at 56, 395 A.2d at 137; *Mason*, 265 Md. at 236, 288 A.2d at 881. One form of sanction authorized by the Maryland Rules is evidence preclusion, which we have affirmed where there has been a confluence of discovery failures related to such evidence. In *Attorney Grievance Commission v. James*, 385 Md. 637, 870 A.2d 229 (2005), James submitted his answers to Bar Counsel's interrogatories, requests for production of documents, and requests for admission of facts and genuineness of documents twenty days after the deadline for the completion of discovery and twenty days before the hearing date. The hearing court determined that

In addition to untimeliness, Bar Counsel asserted that Mr. James's Answers to Interrogatories were unresponsive: Interrogatory number 9 stated, "If you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in the action, provide a brief description, by category and location, of all such documents and other tangible things, and identify all persons having possession, custody, or control of them," to which Respondent replied, "Please see response to request for production of documents. I may rely upon any document that has been reviewed by, received from or sent to the Petitioner." Interrogatory number 17 requested, "For

each of your clients named in the Petition for Disciplinary Action, state in detail the date you were retained, the nature of the legal work for which you were retained, the actual work you performed and the date of termination (if any) for each employment," to which Mr. James responded, "Please see request for production of documents." Interrogatory number 18 asked, "For each of your clients named in the Petition for Disciplinary Action, state the date of each communication you had with each client and the purpose and nature of each such communication (e.g., letter, telephone, etc.) and identify all documents which evince such communications," to which Mr. James responded, "I cannot remember the date of each communication I had with each named client and the purpose and nature of each such communication as specified in this interrogatory." Interrogatory number 19 queried, "For each of your clients named in the Petition for Disciplinary Action, identify each person with whom you communicated on behalf of each client, the date, purpose and nature of each such communication and identify all documents which evince such communications," to which Mr. James replied, "I cannot remember each person with whom I communicated on behalf of each named client as specified in this interrogatory." Further, in response to each and every request for production of documents, Mr. James had stated, "Upon availability, inspection and related activities concerning relevant and non-privileged material, will be provided as requested."

*Id.* at 657–58, 870 A.2d at 241–42. The hearing court foreclosed James from asserting as a defense any of the information implicated in the Bar Counsel's interrogatories and requests for production. Before this Court, James excepted to the ruling, asserting that he had adequately responded to the discovery requests; we disagreed and determined that James did not satisfy either Rule 2–421(b), relevant to this case, or Rule 2–422, relating to requests for production of documents, noting that James' answers "were woefully inadequate in almost all respects, but particularly when in response to Interrogatory number 9," where James cross-referenced his

response to requests for production. *Id.* at 660, 870 A.2d at 243. Therefore, we upheld the evidence preclusion sanctions applied by the hearing judge as "clearly .... proportionate to the discovery abuse." *Id.* at 661, 870 A.2d at 243.

In this case, the Clarkes' failure to properly identify their expert witnesses in their preliminary expert designation and their cross-reference to those inadequate expert designations in each of their answers to interrogatories, as well as their continuous failure to cooperate with Petitioners' repeated requests for dates of depositions of their experts, especially out-of-state witnesses, evidenced a complete lack of good faith in providing access to the discoverable information. This tripartite failure, continuing as it did so close to the scheduled trial date, supports the trial court's decision to preclude all of the Clarkes' expert witness testimony as a sanction for failure to comply with discovery, and we find no abuse of discretion.

This failure of good faith is not mitigated by the fact that notices to take depositions were not issued, rather than letters seeking cooperation, as the Court of Special Appeals determined. Six of the ten expert witnesses identified by the Clarkes were out-of-state witnesses located in California, Louisiana, and Pennsylvania.[19] In reviewing what could have been

---

**19.** One of the States in which the Petitioners would b e required to take depositions in this case is California, a State which is known for having "the most stringent [deposition] application requirements." Timothy L. Mullin, Jr., *Interstate Deposition Statutes: Survey and Analysis,* 11 U. Balt. L.Rev. 1, 17 (1981). The process of subpoenaing residents of California for depositions to be used for proceedings in foreign jurisdictions was governed by Section 2023 of the California Civil Procedure Code, which provided:

A subpoena re deposition or a subpoena duces tecum re deposition directed to [a] witness shall be issued by the clerk of the superior court if it appears by affidavit filed:

(1) That the witness resides within 150 miles from the court issuing such subpoena and from the place at which his attendance is required;

(2) That the testimony of such witness or the documents described in any such subpoena duces tecum are relevant to the subject matter involved in the action or proceeding; and

(3) That under the law of the state, territory, district or foreign jurisdiction in which the action or proceeding is pending, the deposi-

required of Petitioners in this case to subpoena the Clarkes' expert witnesses, we disagree with the Court of Special Appeals' panel's directive that the Petitioners should simply have by-passed the Clarkes, noted the depositions and subpoenaed the witnesses. As we have reflected upon herein, noting the deposition of out-of-state witnesses in lieu of agreement can be an onerous and costly process and is one which easily can be obviated through good faith efforts to communicate available deposition dates.

In the present case, the Petitioners sought information about the Clarkes' experts through the preliminary expert designation, by way of interrogatories, and by attempting to take their depositions. Having received inadequate information and access to discoverable information, Petitioners continuously requested cooperation from the Clarkes in arranging the depositions of the experts. Despite those requests, the Clarkes failed to cooperate, prompting the Petitioners to file motions to compel discovery, as well as supplemental motions to compel. The Clarkes' preterition reflected by their sparse expert witness designation, elusive answers to interrogatories, and failure to communicate, warrant preclusion of their ex-

---

tion of a witness taken under such circumstances may be used in such action or proceeding.

Cal.Civ.Proc.Code § 2023 (1959). Section 2023(2)'s relevancy requirement mandates a showing of relevancy under California law. Mullin, Jr., at 40–41. Thus, Petitioners in this case also would, in most cases, have to retain local counsel in order to properly address the requirements of the affidavit.

Section 2023 was recodified in 2004, effective July 1, 2005, as Section 2029.010, **Authority of courts outside California to compel deponent to appear and testify; production of documents or items,** and provides:

Whenever any mandate, writ, letters rogatory, letter of request, or commission is issued out of any court of record in any other state, territory, or district of the United States, or in a foreign nation, or whenever, on notice or agreement, it is required to take the oral or written deposition of a natural person in California, the deponent may be compelled to appear and testify, and to produce documents and things, in the same manner, and by the same process as may be employed for the purpose of taking testimony in actions pending in California.

2004 Cal.Civ.Proc.Code § 2029.010 (1998, 2007 Supp.).

perts—the sanctions were proportionate to the discovery abuse.

## B. Entry of Summary Judgment

The entry of summary judgment is governed by Maryland Rule 2–501, which provides in pertinent part:

**Entry of judgment.** The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Maryland Rule 2–501(f). We recently explicated the standard of review for the entry of summary judgment in *Property and Casualty Insurance Guaranty Corp. v. Yanni,* 397 Md. 474, 919 A.2d 1 (2007), stating:

"The question of whether the trial court properly granted summary judgment is a question of law and is subject to *de novo* review on appeal. *Standard Fire Ins. Co. v. Berrett,* 395 Md. 439, 450, 910 A.2d 1072, 1079 (2006); *Miller v. Bay City Prop. Owners Ass'n, Inc.,* 393 Md. 620, 632, 903 A.2d 938, 945 (2006), quoting *Myers v. Kayhoe;* 391 Md. 188, 203, 892 A.2d 520, 529 (2006); *Ross v. State Bd. of Elections,* 387 Md. 649, 658, 876 A.2d 692, 697 (2005); *Todd v. MTA,* 373 Md. 149, 154, 816 A.2d 930, 933 (2003); *Beyer v. Morgan State Univ.,* 369 Md. 335, 359, 800 A.2d 707, 721 (2002). If no material facts are in dispute, we must determine whether summary judgment was correctly entered as a matter of law. *Standard Fire Ins. Co.,* 395 Md. at 450, 910 A.2d at 1079; *Ross,* 387 Md. at 659, 876 A.2d at 698; *Todd,* 373 Md. at 155, 816 A.2d at 933; *Beyer,* 369 Md. at 360, 800 A.2d at 721. On appeal from an order entering summary judgment, we review 'only the grounds upon which the trial court relied in granting summary judgment.' *Standard Fire,* 395 Md. at 450, 910 A.2d at 1079; *Ross,* 387 Md. at 659, 876 A.2d at 698, quoting *Eid v. Duke,* 373 Md. 2, 10, 816 A.2d 844, 849 (2003), quoting in turn *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726, 729 (2001)."

*Id.* at 480–81, 919 A.2d at 4–5, quoting *River Walk Apartments, LLC v. Roger Twigg,* 396 Md. 527, 541–42, 914 A.2d 770, 778 (2007).

 Expert witnesses play a pivotal role in medical malpractice actions in which the plaintiffs bear the burden of proof of demonstrating that the healthcare provider breached the requisite standard of care or skill and that such breach was a direct cause of the injury. *Nolan v. Dillon,* 261 Md. 516, 534, 276 A.2d 36, 46 (1971); *Suburban Hosp. Ass'n v. Mewhinney,* 230 Md. 480, 484, 187 A.2d 671, 673 (1963), citing *Lane v. Calvert,* 215 Md. 457, 462, 138 A.2d 902, 905 (1958); *Miller v. Leib,* 109 Md. 414, 426, 72 A. 466, 470 (1909). *See also Shilkret v. Annapolis Emergency Hosp. Ass'n,* 276 Md. 187, 190, 349 A.2d 245, 247 (1975); *Johns Hopkins Hosp. v. Genda,* 255 Md. 616, 623, 258 A.2d 595, 599 (1969). Because the gravamen of a medical malpractice action is "the defendant's use of suitable professional skill," which "is generally a topic calling for expert testimony," this Court has repeatedly recognized that "expert testimony is required to establish negligence and causation." *Holzhauer v. Saks & Co.,* 346 Md. 328, 339, 697 A.2d 89, 94 (1997); *Meda v. Brown,* 318 Md. 418, 428, 569 A.2d 202, 207 (1990); *Thomas v. Corso,* 265 Md. 84, 97, 288 A.2d 379, 387 (1972); Genda, 255 Md. at 623, 258 A.2d at 599; *State, to Use of Kalives v. Baltimore Eye, Ear, and Throat Hosp.,* 177 Md. 517, 526, 10 A.2d 612, 616 (1940); *Fink v. Steele,* 166 Md. 354, 361, 171 A. 49, 52 (1934). If proof of either of these two elements is lacking, "the court may rule, in its general power to pass upon the sufficiency of the evidence, that there is not sufficient evidence to go the jury." *Fink,* 166 Md. at 361, 171 A. at 52. *See also Mewhinney,* 230 Md. at 484, 187 A.2d at 673, citing *Lane,* 215 Md. at 462, 138 A.2d at 905; *Genda,* 255 Md. at 622, 258 A.2d at 599, quoting *Kalives,* 177 Md. at 526, 10 A.2d at 616.

We recently have affirmed the entry of summary judgment in a medical malpractice action when the plaintiff was unable to produce expert testimony on causation. In *Aventis Pasteur, Inc.,* 396 Md. at 405, 914 A.2d at 113, the plaintiffs were unable to produce expert testimony on causation after the trial

judge had extended discovery three times by way of amended scheduling orders. The trial court granted the defendants' motion for summary judgment on the grounds that, " 'without any expert testimony on the issue of specific causation, the Court must grant the ... defendants' motion for summary judgment as a matter of law.' Causation, an essential element to the cause of action ... simply was not demonstrated on the record." *Id.* at 416, 914 A.2d at 119–20. We affirmed the grant of summary judgment, explicating that "[i]t is clear in the present case that a medical expert on specific causation was necessary in order to substantiate [the Plaintiffs'] cause of action," and that:

> [t]he trial court was correct in his legal conclusion that summary judgment was appropriate under the circumstances. Despite three amended scheduling orders, and approximately 11 months allotted to conduct discovery, Respondents failed to produce an expert who could testify to specific causation within a reasonable degree of scientific certainty. Without such an expert, [the Plaintiffs'] claims must fail as a matter of law.

*Id.* at 441, 443, 914 A.2d at 135, 135–36. Clearly, in the present case, the Clarkes could not adduce expert testimony on causation or breach of the standard of care, so that summary judgment was appropriate.[20]

The Clarkes contend, nevertheless, that summary judgment was erroneously entered because it was in reality a sanction for failure to comply with discovery, which, they assert, we have prohibited, citing *Broadwater*, 267 Md. at 329, 297 A.2d at 671, in support. In *Broadwater*, the defendant moved for summary judgment on the following grounds:

> 1. That in actions for malpractice against physicians and dentists, the issue of professional skill is generally a topic requiring expert testimony. . . .

---

**20.** We note that the deposition of Dr. Shaughnessy, the only expert witness of the Clarkes that was deposed, also was precluded by the Circuit Court as a sanction due to the Clarkes' dilatory efforts to properly designate him as an expert to be called at trial at the motions hearing just two weeks before the trial.

2. [Plaintiff's] answers to interrogatories disclosed that he had 'no expert witnesses to establish his claim that [the defendant] was negligent' or failed to employ the skill required of him.

3. That [the plaintiff's] answers also presented 'no evidence' concerning the applicable standard of care, without which he could not establish a prima facie case of malpractice . . .

*Id.* at 333, 297 A.2d at 673. The trial judge granted the motion for summary judgment, stating:

The Interrogatories, and, therefore, the record would indicate that the Plaintiff has no medical testimony to offer on behalf of his claim. . . . For these reasons, the Motion . . . will be granted and summary judgment entered.

*Id.* at 335, 297 A.2d at 674. We reversed the entry of summary judgment, determining that:

Nothing contained in . . . the Maryland Rules of Procedure, nor in any of our decisions, has ever permitted the granting of summary judgment as a remedy for failure to furnish the name of an expert witness one proposes to produce at his trial; nor, indeed, for any other failure to obey the discovery rules. The sanctions for failure to comply with the discovery rules are comprehensive and have been deemed adequate to insure compliance.

*Id.* at 335–36, 297 A.2d at 674. We went on to note that,

In this connection, it should be noted that Rule 417, which governs discovery by interrogatory, expressly allows for the filing of exceptions to answers, a procedure which might well have been utilized here by appellee if he judged appellant's answers to be unresponsive. Since answers to interrogatories are held to be continuing in nature even where they are not expressly so made, although they were here, appellee would not have been exposed to the danger of surprise if the case had been allowed to proceed to trial. In point of fact, there was nothing to prevent the trial court, at the summary judgment hearing, from dealing with the apparent inadequacy of appellant's answers by imposing

sanctions sua sponte within the framework of the discovery rules.

*Id.* at 336, 297 A.2d at 674 (citation omitted).

 *Broadwater,* however, is distinguishable from the present case on many grounds. For one, the Circuit Court did not grant summary judgment in this case as a sanction for failure to comply with discovery; the Circuit Court granted summary judgment because, without expert witness testimony, the Clarkes could not sustain their burden of proof as to standard of care or causation, as articulated in *Aventis,* 396 Md. at 443, 914 A.2d at 135–36. Even were discovery to be seen as the gravamen, Petitioners in the instant case, unlike in *Broadwater,* made every effort, throughout the process, to communicate with the Clarkes in order to obviate the discovery impasse created by the Clarkes through their sparse expert witness designation, answers to interrogatories, and refusal to cooperate with Petitioners in determining deposition dates.[21]

The Clarkes' failure to properly identify their expert witnesses in their Preliminary Expert Designation in accordance with Rule 2–402(f)(1)(a), further exacerbated by their repeated reference to their deficient Preliminary Expert Designation in their answers to interrogatories, made the opportunity to depose the Clarkes' expert witnesses, six of which were out-of-state, pivotal, and without the Clarkes' cooperation, unduly arduous. Thus, we reverse the Court of Special Appeals and hold that the Circuit Court did not abuse its discretion in sanctioning the Clarkes and subsequently entering summary judgment for the Petitioners.

### *JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT*

---

**21.** The Clarkes further argue that the Circuit Court improperly considered the Petitioners' motion for summary judgment, which was filed after the Scheduling Order's deadline for filing dispositive motions. We disagree. A motion for summary judgment may be made, even orally, at any time during proceedings. *Beyer,* 369 Md. at 359, 800 A.2d at 721.

*WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY. COSTS TO BE PAID BY RESPONDENTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.*